[No. 53097–1.   En Banc.   January 7, 1988.]

COWLES PUBLISHING COMPANY, *Respondent,* v. THE STATE
PATROL, ET AL, *Petitioners.*

Kenneth O. Eikenberry, Attorney General, and Chip Holcomb, Assistant; Donald C. Brockett, Prosecuting Attorney, and David A. Saraceno, Deputy; James C. Sloane, City Attorney, and Rocco N. Treppiedi and Richard C. Robinson, Assistants, for petitioners State, et al.

Kain & Snow, by Gregory G. Staeheli, for petitioner Spokane Police Guild.

Witherspoon, Kelley, Davenport & Toole, P.S., by Duane M. Swinton, for respondent.

Leo Poort on behalf of Washington Association of Sheriffs and Police Chiefs, amicus curiae for petitioners.

Richard W. Kuhling on behalf of the American Civil Liberties Union and Michael J. Killeen on behalf of Allied Daily Newspapers and Washington Association of Broadcasters, amici curiae for respondent.

CALLOW, J.—Cowles Publishing Company is the owner of two newspapers, the Spokane Chronicle and the Spokesman–Review. The newspapers seek access to the names of law enforcement officers against whom complaints have been sustained after internal investigations conducted by their respective law enforcement agencies. We hold that those names were properly withheld pursuant to the RCW 42.17.310(1)(d) investigative records exemption to the public disclosure act.

During the summer of 1983, a reporter investigating an incident in which two Spokane police officers shot and killed a man was told that the same officers might have been involved in a prior incident in which they allegedly used excessive force. The reporter also heard that the prior incident generated a citizen's complaint resulting in the officers being reprimanded. In an effort to substantiate this

information, the newspapers requested, pursuant to the public disclosure act, RCW 42.17, that the Spokane Police Department release all internal investigation records pertaining to citizens' complaints against police officers. The newspapers sought the information on the same basis available to a private citizen. This request was later amended to seek only those records or files generated by complaints filed during 1983 which were determined to be true, *i.e.*, "sustained", following an internal affairs investigation. Similar requests were made to the Spokane County Sheriff's Department and the Washington State Patrol relating to instances occurring in Spokane County during 1983.

The three agencies consented to provide edited copies of the documents requested, but intended to delete information relating to the identity of the officers involved, the complaining parties, and other witnesses who had been interviewed. The agencies claimed the deletions were necessary to protect the privacy interests of the persons named in the documents, to insure effective internal affairs investigations, and the confidentiality of reported complaints. Subsequently, the Spokane Police Department and the Spokane Sheriff's Department did release eight edited files with the aforementioned deletions.[1] The Washington State

---

[1]Six edited incidents were reported by the Spokane Police Department; they are: (1) harassment by a police officer of an accident victim as the victim lay injured on a stretcher; (2) the use of obscene language by an officer while arresting an individual for running a stop sign; (3) the false arrest and incarceration of a shoplifting suspect by an officer; (4) the failure of a supervising police officer to take a citizen's complaint concerning a police officer's arrest; (5) the stopping of an off–duty officer, in civilian clothes, for weaving in and out of traffic on a motorcycle at 90 miles per hour; and (6) harassment by an off–duty reserve officer of private citizens at their home. Two edited reports were released by the Spokane Sheriff's Department which encompassed: (1) purchase of beer for a minor by an off–duty deputy sheriff; and (2) the use of abusive language by deputies after they broke down the door to a house while looking for theft suspects; one deputy subsequently struck a handcuffed individual, after he spat in the deputy's face.

An editor of the newspapers testified that only one of these incidents is "newsworthy." Since the names of the officers were not disclosed, the record does

Patrol offered to provide similar information, but was not requested to do so.

The newspapers initiated this action and obtained an order requiring the three agencies to show cause why they should not disclose the unedited versions of the records. The Spokane Police Guild was allowed to intervene and a hearing was held on July 12 and 13, 1984.

Each agency maintains an internal affairs division, which upon receipt of a complaint investigates each incident. The officer involved is required to disclose his or her recollections with the understanding that no evidence thus disclosed may be used in any criminal investigation. The officer does not have the right to interrogate other witnesses, is not entitled to assert the privilege against self-incrimination, and is subject to dismissal upon refusal to respond. *Seattle Police Officers' Guild v. Seattle,* 80 Wn.2d 307, 494 P.2d 485 (1972). The head of the agency, on the basis of all the evidence, determines whether to sustain the complaint and impose a sanction or dismiss it. Approximately 10 percent of the complaints registered either by citizens or from within an agency are sustained. The officer may appeal from the determination and is accorded a public hearing on appeal. RCW 43.43.070 (Washington State Patrol); RCW 41.14.120 (county sheriffs); RCW 41.12.090 (city police).[2]

Internal affairs investigative files are maintained separately from the officer's personnel file, although a notice of sanction is placed in the personnel file. The Washington State Patrol disseminates information concerning sanctions through its teletype network to each of its divisional offices, which in turn discloses within the organization the name of the disciplined officer and the infraction.

Officers of each agency testified concerning the appre-

---

not reflect whether any of the officers involved in these incidents were involved in the shooting incident which prompted the request for disclosure.

[2]The civil service ordinance of Spokane denies an officer a public hearing if the sanction is a suspension of 5 days or less.

hension and anxiety arising from the filing of complaints. This tension and concern is felt by the officers, their families and the department. This testimony was supported by a police psychologist. The psychologist testified that the usual high level of stress accompanying the duties of an officer was significantly increased by the added stress of an internal affairs investigation. He also described the stress, aggravation, and humiliation visited upon the families of officers who complained against colleagues. The psychologist stated that disclosure of this information could result in a "code of silence" among the officers, resulting in instances of misconduct not being reported. Several high ranking officers in positions of leadership within their internal affairs departments also testified that if the names of complainants, witnesses or the officers complained against could be released to the public, such a situation would inhibit the investigative process. One such officer testified that all of the witnesses who were asked as to their wishes desired to remain anonymous insofar as the public was concerned. These witnesses testified, in general, that if the names of complainants, witnesses or of the officers complained against were to be released to the public, fellow officers would be reluctant to assist internal affairs and the system so needed to combat inefficiency and misconduct would be severely handicapped or ineffective.

The court entered findings of fact, conclusions of law, and an order concluding that the names of complainants, witnesses and the officers complained against in internal investigative reports were exempt from disclosure. The court found that release of the names of the individual officers, coupled with other factual data in the reports, would violate the officers' rights of privacy within the context of the personal information exemption, RCW 42.17.310(1)(b). Further, the court held the requested information constituted "specific investigative records" and concluded the nondisclosure of the officers' names was "essential to effective law enforcement" as exempt under RCW 42.17.310-(1)(d).

The trial court specifically found:

The Internal Affairs Investigations are essential to: a) the management of each law enforcement agency; b) the maintenance of the integrity of each law enforcement agency; and c) the maintenance of the public's confidence in each law enforcement agency.

Confidentiality is necessary in order to encourage complaints to be made, rather than to the contrary. Each defendant agency encourages citizens and employees to file complaints whenever s/he believes the agency employee acted inappropriately.

If the individual law enforcement agencies were unable to assure confidentiality to the complaining witnesses, the ability of the specific law enforcement agencies to carry out their functions in investigating complaints against individual law enforcement officers would be seriously hampered. If the complaining witness is a law enforcement officer and if the name of the charged officer would be made public, the ability of the Internal Affairs Section of each law enforcement agency to obtain open and candid comments from complaining witnesses who happen to be law enforcement officers would be seriously hampered.

Law enforcement officers agree that it is necessary to investigate all complaints about their conduct in a thorough and objective manner.

Defendant City of Spokane has approved of the method by which citizen complaints are investigated by the Spokane Police Department's Internal Affairs Officer, who reports directly to the Office of the Chief of Police. Defendant City of Spokane has recognized the need for maintaining the confidentiality of the names of people who file complaints or whose right to privacy would be violated. Further, Defendant City of Spokane is able to monitor the integrity and effectiveness of the Spokane Police Department via the "chain of command" whereby the Chief of Police, who utilizes the Internal Affairs process, is directly responsible and reportable to the City Manager, who is directly responsible and reportable to the Spokane City Council, who is directly responsible and reportable to the citizens of the City of Spokane.

Compelled disclosure of the identities of those persons involved in investigations of alleged police misconduct would seriously hinder the ability of law enforcement

agencies to receive and investigate the alleged misconduct. Law enforcement agencies cannot compel private citizens to provide evidence or information regarding alleged misconduct; accordingly, they must depend upon cooperation and information that is produced voluntarily. If disclosure were required, some citizens would never complain and some would refuse to provide any evidence, or would refuse to cooperate in a complete manner. Further, if disclosure of identities were required, some police officers would be less likely to cooperate at all or to provide full and complete information during the investigation.

Disclosure of the names of the Charged Officers would seriously affect the morale of each law enforcement agency as a whole. Disclosure of the name of the charged officer would have a serious negative impact upon the charged officer and his family. Disclosure of the names would result in a decline in the morale of the officer; subject the officer to annoyance and harassment in either his office or private life; subject the officer and his family to great embarrassment; and adversely affect the individual officer psychologically.

The order of the trial court was reversed by the Court of Appeals. The three law enforcement agencies were directed to disclose the names of the officers against whom each complaint was sustained. This court granted the Spokane Police Guild's petition for review.

█ The request for the names of police officers was made pursuant to the public disclosure act, codified as RCW 42.17. The declaration of policy of the act states:

That, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.

The provisions of this chapter shall be liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying, and the financial affairs of elected officials and candidates, and full access to public records so as to assure continuing public confidence of fairness of elec-

tions and governmental processes, and so as to assure that the public interest will be fully protected. In promoting such complete disclosure, however, this chapter shall be enforced so as to insure that the information disclosed will not be misused for arbitrary and capricious purposes and to insure that all persons reporting under this chapter will be protected from harassment and unfounded allegations based on information they have freely disclosed.

RCW 42.17.010(11). The basic purpose of the public disclosure act is to provide a mechanism by which the public can be assured that its public officials are honest and impartial in the conduct of their public offices. *In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986).

The public disclosure act requires that all public records be available for inspection and copying under RCW 42.17-.270, with certain exemptions listed in RCW 42.17.310. In addition, former RCW 42.17.260(1) provides that:

> To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing.

Public records are defined in RCW 42.17.020(26) as including:

> [A]ny writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

None of the parties contend that the reports requested are not "public records". However, the law enforcement agencies assert that the names of officers were properly deleted because disclosure of the names would constitute "an unreasonable invasion of personal privacy" pursuant to RCW 42.17.260(1), and because they fall within one or both of the following exemptions:

> (b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their

right to privacy.

. . .

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.17.310(1)(b), (d). Public records which meet the requirements of one of these or other exemptions listed in RCW 42.17.310(1) need not be disclosed.

I

When the Spokane Police Department and the other law enforcement agencies released records of internal investigations of complaints upheld against their officers, they asserted that deletion of the names of those officers was necessary to protect the personal privacy of the officers as required by RCW 42.17.260(1). The plaintiff newspapers contend that interpretations of the public disclosure act by this court in *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978) and its progeny have determined that the release of names under circumstances such as these does not constitute an unreasonable invasion of privacy and thus deletion of the names is not justified under the act.

RCW 42.17.260(1) allows an agency to delete names and other identifying details from records released under the public disclosure act, if such deletions are "required to prevent an unreasonable invasion of personal privacy". The public disclosure act does not contain a definition of what constitutes "personal privacy". However, that issue was addressed in *Hearst,* a case involving RCW 42.17.310(1)(c), one of the exemptions from the duty of disclosure. There it was stated:

Inasmuch as the statute contains no definition of the term, there is a presumption that the legislature intended the right of privacy to mean what it meant at common law. *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 47, 541 P.2d 989 (1975). The most applicable privacy right

would appear to be that expressed in tort law. Tort liability for invasions of privacy by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D, at 383 (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." The comment to the Restatement illustrates what nature of facts are protected by this right to privacy.

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Restatement, *supra* at 386.

> The standard and analysis of the Restatement appear well suited to fill the definitional void of RCW 42.17.310-(1)(c). In addition to the fact that the tort right is the most widely recognized and established definition of the legal right to privacy, the context in which that right has emerged and the considerations surrounding its development are uniquely analogous to the values and interests which subsection (1)(c) appears designed to protect. We therefore adopt the Restatement standard as the controlling one.

*Hearst,* at 135–36.

In *Hearst,* a newspaper sought disclosure of personal and real property tax records of private citizens in an effort to determine whether the King County Assessor had given special favors to persons who contributed to his campaign. Mr. Hoppe, the Assessor, asserted that deletion of the names of the taxpayers involved was necessary to protect

"the taxpayer's right to privacy" as required to exempt the information from disclosure under RCW 42.17.310(1)(c). This court found that release of the names would not unreasonably invade the taxpayers' personal privacy, and ordered that the record be disclosed with the names intact.

In the present action the defendant law enforcement agencies contend that the holding of the *Hearst* case should be limited to its facts, and that this court's adoption of the Restatement (Second) of Torts § 652D test for invasion of privacy was not intended as a general definition to be applied to all of the instances in which an unreasonable invasion of personal privacy must be proven to justify non-disclosure of public records under the public disclosure act. We disagree. "It is a familiar canon of construction, that when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout." *Booma v. Bigelow–Sanford Carpet Co.*, 330 Mass. 79, 82, 111 N.E.2d 742, *quoted in DeGrief v. Seattle*, 50 Wn.2d 1, 11, 297 P.2d 940 (1956). The definition of "invasion of privacy" set forth with respect to one section of the public disclosure act should also apply to an invasion of privacy in respect to other sections of the act.

The Court of Appeals has applied the § 652D test for invasion of privacy in several situations not involving the specific exemption considered in *Hearst. State Human Rights Comm'n v. Seattle*, 25 Wn. App. 364, 607 P.2d 332 (1980) applied the § 652D test to a decision by the City of Seattle to delete the names of job applicants from copies of applications provided to an individual who believed he was the victim of unfair hiring practices. The applications included information such as the applicants' education and work experience, previous salaries, reasons for leaving former employment, military services, criminal convictions, and mental or physical disabilities. Applying the § 652D test, the court concluded "[i]t cannot be disputed by any reasonable person that the public disclosure of material contained in answers to the above questions would or could be highly offensive to the five applicants", *Human Rights*

*Comm'n,* at 370, and ruled that the names of the applicants need not be disclosed.

The *Hearst* § 652D test to the right of privacy pursuant to RCW 42.17.310(1)(b), (d) was applied to two other cases involving the exemptions at issue in the present action. *Laborers Int'l, Local 374 v. Aberdeen,* 31 Wn. App. 445, 642 P.2d 418, *review denied,* 97 Wn.2d 1024 (1982) applied the *Hearst* § 652D test to determine that release of payroll records of a private contractor, including the names of the contractor's employees, would not invade the employees' privacy under RCW 42.17.310(1)(d). *Columbian Pub'g Co. v. Vancouver,* 36 Wn. App. 25, 671 P.2d 280 (1983) applied the *Hearst* § 652D test to determine that the Vancouver Police Department was required to disclose written statements of individual police officers detailing specific complaints against the police chief after the police union had voted no confidence in the chief. The court ruled that the statements did not come within the RCW 42.17.310-(1)(a), (b) exemption and must be released, stating that "[a]lthough it is true that any close observer of Vancouver police activities will be able to ascertain the identities of several of the officers from the events related, we find nothing of a highly offensive personal nature in them." *Columbian Pub'g,* at 30.

The defendant law enforcement agencies cite two post–*Hearst* cases pertaining to the applicability of the 2–part § 652D test to the present case. First, from *Rhinehart v. Seattle Times Co.,* 98 Wn.2d 226, 237, 654 P.2d 673 (1982), *aff'd,* 467 U.S. 20, *cert. denied,* 467 U.S. 1230 (1984), the defendants quote the following language:

A threatened invasion of [privacy] interests may not have all of the characteristics necessary to warrant recovery of damages under existent tort principles . . .

However, the defendants fail to continue with the quotation to give the examples listed in *Rhinehart.* The full statement from *Rhinehart* reads:

Rights of privacy are established in tort law. *See* Restatement (Second) of Torts §§ 652–652I (1977); *Mark*

*v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981). A tort action should not and does not constitute the sole protection which government affords to the privacy interest of individuals. A threatened invasion of those interests may not have all of the characteristics necessary to warrant recovery of damages under existent tort principles and yet be properly a subject of governmental sanction. Numerous statutes of this state provide examples of such intervention.

These include RCW 43.07.100 (information regarding personal affairs furnished to the Bureau of Statistics); RCW 26.26.050 (records of artificial insemination); RCW 71.05.390 (information regarding the mentally ill); RCW 7.68.140 (information regarding records of crime victims). Other statutes protecting confidentiality include RCW 10.29.030(3), RCW 15.65.510, RCW 18.20.120, RCW 18.46.090, RCW 18.72.265, RCW 19.16.245, RCW 24.03-.435, RCW 24.06.480, RCW 42.17.310 (the public disclosure initiative lists 11 categories of exempt records, including those containing personal information regarding students, patients, clients, prisoners, probationers, parolees, and information regarding employees, appointees or elected officials, "to the extent that disclosure would violate their right to privacy"), RCW 43.21F.060, RCW 43.22.290, RCW 43.43.856, RCW 43.105.041, RCW 48.13.220, RCW 49.17.200, and RCW 78.52.260.

*Rhinehart,* at 236–37.

*Rhinehart* did not take issue with the *Hearst* definition of "invasion of privacy" adopted from the Restatement (Second) of Torts § 652D. Rather, the *Rhinehart* opinion pointed out that various statutes, including sections of the public disclosure act, protect information about individuals or agency activities beyond the safeguards afforded by a common law right to privacy. The fact that the public disclosure act and other statutes specifically set out additional safeguards for specific types of information does not indicate that the "right to privacy" referred to in those statutes should be expanded beyond the common law definition absent specific statutory language creating additional protections from disclosure.

*Barfield v. Seattle,* 100 Wn.2d 878, 676 P.2d 438 (1984)

upheld a trial court order to disclose Seattle Police Department internal investigation files to the plaintiffs in a lawsuit against the city, subject to a protective order forbidding unauthorized use of the files without court consent. *Barfield,* at 888. The defendants suggest that because this court allowed the protective order in *Barfield,* it is bound to deny public access to internal investigation files in this case. That conclusion does not necessarily follow. In *Barfield,* the plaintiffs argued only for the right to use the investigation files for the purposes of discovery in seeking damages for alleged police misconduct; they did not seek the right to publish the information. The question of whether internal investigation files should be open to the general public was not properly before the court in *Barfield.* The court did not decide the issue, and thus did not establish precedent for denial of access to the records requested in the case at bar. The opinion, however, stated, in part:

> Privilege under RCW 42.17.310(1)(b), (d), and (e) is conditional. To preclude disclosure there must be a showing that disclosure would violate the right of privacy, make law enforcement ineffective, or endanger a person's life, physical safety, or property. The defendants were unable to show these countervailing interests. Under these circumstances no privilege can be granted under the statute.

*Barfield,* at 885.

Two other concerns distinguish the *Barfield* case from the present action. First, it is unclear from the *Barfield* opinion whether the investigative files sought by the plaintiffs were the result of concluded or pending investigations. Release of files dealing with pending investigations, or with complaints which were later dismissed, would constitute a more intrusive invasion of privacy then would the release of files relating only to completed investigations which resulted in some sanction against the officers involved. In addition, the investigative files discovered by the plaintiffs in *Barfield* included the names of witnesses, thereby raising

the privacy interests of persons other than the law enforcement officers against whom the complaints were filed. We do not consider the *Barfield* rationale to indicate that investigative files should be protected from disclosure in the instant case because disclosure of the files to the public was not requested or argued for in *Barfield,* and because disclosure of the *Barfield* files would involve broader privacy implications than the interests implicated in the present action. We hold that the Restatement (Second) of Torts § 652D test as adopted in *Hearst* when applied here does not preclude disclosure of the files.

We continue the discussion of the right of privacy with the comment to § 652D, the Restatement (Second) of Torts, in mind. In contrast to the types of information listed in the Restatement's comment, the information contained in the police investigatory reports in the present case does not involve private matters, but does involve events which occurred in the course of public service. Instances of misconduct of a police officer while on the job are not private, intimate, personal details of the officer's life when examined from the viewpoint of the *Hearst* case. They are matters with which the public has a right to concern itself.

We read the foregoing cases as indicating a balancing test is involved when resistance to the disclosure of public records is based upon a claimed unreasonable invasion of personal privacy. The court must first decide whether the matters to be disclosed involve "personal privacy" as defined by § 652D to wit: the intimate details of one's personal and private life. If such personal and private details are involved then the court must decide whether the invasion caused by disclosure would be unreasonable. If the off duty acts of a police officer bear upon his or her fitness to perform public duty or if the activities reported in the records involve the performance of a public duty, then the interest of the individual in "personal privacy" is to be given slight weight in the balancing test and the appropriate concern of the public as to the proper performance of public duty is to be given great weight. In such situations

privacy considerations are overwhelmed by public account-ability.

We also conclude that a law enforcement officer's actions while performing his public duties or improper off duty actions in public which bear upon his ability to perform his public office do not fall within the activities to be protected under the comment to § 652D of Restatement (Second) of Torts as a matter of "personal privacy".

Under the *Hearst* § 652D test, disclosure of the officers' names would not invade the officers' right to privacy because such disclosure would not be offensive to a reasonable person, and because matters of police misconduct are of legitimate concern to the public. The officers' identities are not protected under RCW 42.17.260(1).

## II

The law enforcement agencies contend that the identities of officers against whom complaints have been sustained are exempt from disclosure under RCW 42.17.310(1)(b), which provides:

The following are exempt from public inspection and copying:

. . .

(b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.

Since we have determined that disclosure of the officers' names in the internal affairs investigative files would not violate their rights to privacy, the names of the officers set forth in those files are not exempt from disclosure under RCW 42.17.310(1)(b) in this case.

## III

Finally, the law enforcement agencies contend that the officers' names are exempt from disclosure under RCW 42.17.310(1)(d), which provides:

The following are exempt from public inspection and copying:

. . .

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

We believe that this section of the statute was inserted with the present situation in mind. It is to be read with the last sentence of the declaration of policy which states:

In promoting such complete disclosure, however, this chapter shall be enforced so as to insure that the information disclosed will not be misused for arbitrary and capricious purposes and to insure that all persons reporting under this chapter will be protected from harassment and unfounded allegations based on information they have freely disclosed.

RCW 42.17.010. Although the nondisclosure of the officers' names is not necessary for the protection of their right to privacy, it is "essential to effective law enforcement". We hold that the officers' names are exempt from disclosure under RCW 42.17.310(1)(d).

Where the information sought is not protected under a right to privacy theory, RCW 42.17.310(1)(d) exempts from disclosure only intelligence information and specific investigative records (1) "compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession," and (2) "the nondisclosure of which is essential to effective law enforcement". These criteria have been met in this case. The inquiry is whether the statute provides an exemption for these particular records because their nondisclosure is necessary for effective law enforcement and whether the evidence supports the trial court's findings that nondisclosure is necessary.

The Spokane Police Department, the Spokane County Sheriff's Department and the Washington State Patrol are all law enforcement agencies. The internal investigative divisions of each of those law enforcement agencies are

mentioned in the same exemption section of the statutes as are "state agencies vested with the responsibility to discipline members of [a] profession". It is the duty of the internal investigative divisions of the Spokane Police Department, the Spokane County Sheriff's Department and the Washington State Patrol to investigate complaints against and, if appropriate, to discipline members of the law enforcement profession. Records kept by those agencies or by their respective internal investigations divisions meet the first criterion of the RCW 42.17.310(1)(d) exemption from disclosure.

We further find that the nondisclosure of the officers' names is "essential to effective law enforcement". Effective law enforcement requires a workable reliable procedure for accepting and investigating complaints against law enforcement officers. Such a procedure is necessary to ensure that law enforcement officers do not abuse their authority or engage in unlawful activities. In addition, reliable internal investigation procedures uphold the integrity of the law enforcement agency in the minds of the public and the officers.

RCW 42.17.310(1)(d) when read as a whole deals with agencies which have the responsibility of regulating the conduct of their members, keeping them in order and appropriately punishing misbehavior. The nature of the work of each agency and the personnel involved is such that it can be expected that many complaints, both justified and unjustified, would be received about persons governed by the agencies. As noted in *Barfield,* the exemption from disclosure under RCW 47.17.310(1)(d) is conditional upon there being a showing that disclosure would make law enforcement ineffective. Here the law enforcement agencies have proven that "countervailing interest" and the trial court has so found. It is a factual verity on appeal. We read the statute in the light of the circumstances of this case to apply to the records of internal affairs sections of law enforcement agencies insofar as nondisclosure of those records is essential to effective law enforcement.

As they currently operate in the various law enforcement agencies in Spokane County, internal investigation procedures are based on an assumption that information gathered during investigations will be kept confidential, unless criminal charges are brought against the offending officer or the officer appeals the sanction imposed. Because disciplinary sanctions are confidential within the agency and do not rise to the level of criminal penalties, a law enforcement officer under investigation is not afforded certain traditional due process protections. Unlike a criminal defendant, an officer subject to internal investigation must give a statement regarding an incident under investigation, and failure to cooperate with the internal investigations unit could lead to dismissal. At the same time, an officer under investigation has no right to call witnesses in his defense. Although other officers are under a duty to cooperate with the internal investigation unit, private citizens cannot be compelled to give statements. Therefore, a sanction may be imposed on the basis of a record obtained without traditional due process safeguards. The procedures provide a reasonable basis by which sanctions can be imposed within the confines of a law enforcement agency, but do not provide a reasonable justification for exposing an officer to ridicule by releasing his name to the public.

When a complaint is upheld against a law enforcement officer, the law enforcement agency imposes a sanction against the officer in proportion to the seriousness of the offense committed. Depending upon the law enforcement agency and the sanction imposed, the officer may or may not have a right to appeal. Under the procedures followed by the Spokane County Sheriff's Department and the Washington State Patrol, the charged officer may appeal any sanction. Under the procedure followed by the Spokane Police Department, if a sustained finding results in disciplinary sanctions of 5 days or less suspension from employment, the charged officer has no right of appeal. The testimony indicates that if the name of a sanctioned officer were released to the public, the officer and his family could

face public ridicule, harassment and even violence. In addition, release of a sanctioned officer's name to the public could result in adverse effects upon the law enforcement agency as a whole and the trial court so found.

The Court of Appeals held that the investigative records exemption of RCW 42.17.310(1)(d) was inapplicable relying upon *Stern v. FBI,* 737 F.2d 84 (D.C. Cir. 1984). We read *Stern* in a different light.

First of all, we note that the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, differs in many ways in its wording from the state act, RCW 42.17. The federal act exempts, *inter alia*:

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . .

5 U.S.C. § 552(b)(7).

The primary objective of this comparable section in FOIA is the protection of "enforcement proceedings" and nondisclosure of records which would jeopardize criminal investigations. RCW 42.17.310(1)(d) expresses a broader purpose which protects law enforcement agencies and "effective law enforcement" from destructive intrusion. There is a subtle but important difference in emphasis between the protection of investigatory files compiled for law enforcement purposes (5 U.S.C. § 552(b)(7)) and the protection of specific intelligence information and investigative records compiled by a law enforcement agency, the nondisclosure of which is essential to effective law enforce-

ment. RCW 42.17.310(1)(d). *See Weisberg v. Department of Justice,* 489 F.2d 1195 (D.C. Cir. 1973).

Secondly, as we read *Stern,* which was based upon *Rural Housing Alliance v. Department of Agriculture,* 498 F.2d 73 (D.C. Cir. 1974), both *Stern* and *Rural Housing Alliance* held that internal audits and monitoring were not exempt from public disclosure being general investigations and audits of agency operations as opposed to specific investigations of designated personnel. We do not have before us a question involving a "broad interpretation" which would indeed allow an exemption to swallow up the act. *Rural Housing Alliance* discussed the investigation of agencies seeking to discover whether agency practice was in accord with the law. Such general agency investigations were held nonexempt, but specific investigations of individuals for law enforcement purposes, whether external or internal, were to be protected. The distinction was made between oversight of agency performance, which was not protected, and investigations of specific individuals which could result in criminal or civil sanctions. These latter records were held to be protected from disclosure as being for law enforcement purposes.

In *Aspin v. Department of Defense,* 491 F.2d 24 (D.C. Cir. 1973), which involved an attempt to disclose the specific investigative records of the My Lai incident, it was held that since this was an investigatory file compiled for law enforcement purposes it was exempt from FOIA disclosure. The court noted that the major underlying reason for precluding disclosure was to protect sources of information whether or not the investigation was pending or concluded. The court relied on *Frankel v. SEC,* 460 F.2d 813, 817–18 (2d Cir. 1972), stating that it was clear that:

> If an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. The agency's investigatory techniques and procedures would be revealed. The names of people who volunteered the information that

had prompted the investigation initially or who contributed information during the course of the investigation would be disclosed. The possibility of such disclosure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants.

*Aspin,* at 30. We find these observations particularly apropos insofar as effective law enforcement and internal management within police agencies is concerned.

Internal investigations depend upon the trust and cooperation of the law enforcement officers within the agency. In many situations, the cooperation of the officers is available because they know the incident will be kept confidential. If a sanctioned officer's name could be publicized, many officers would not report incidents of misconduct, or give statements which would discredit a fellow officer. In addition, if a sanctioned officer's name were to be made known to the public, even internal investigations officers would hesitate to uphold a complaint against an officer, knowing that serious consequences could result from the adverse publicity. We read RCW 42.17.310(1)(d) as an expression of these considerations.

We find that the confidentiality of the names of persons reflected on the records of internal investigations is necessary to effective law enforcement. We hold that where internal investigation files have already been released, the names of the complainants, witnesses and officers involved are exempt from disclosure under RCW 42.17.310(1)(d).

The decision of the Court of Appeals is reversed. The decision of the trial court is reinstated.

PEARSON, C.J., and BRACHTENBACH and DORE, JJ., concur.

ANDERSEN, J. (concurring in the result)—In the past, I have expressed my view that the public disclosure act opens the public record doors much wider to the press and the

public than the majority of the court is willing to concede.[3] In the case at bench, however, I am constrained by the trial court's findings and conclusions that "[t]he information sought by the Plaintiff constitutes specific investigative records as defined by RCW 42.17.310(1)(d) compiled by investigative law enforcement and penology agencies" and that "[t]he non–disclosure of the names of the complaining witness, any other witnesses, and the charged officer in the case of internal affairs investigations is essential to effective law enforcement".[4] The code section so referred to by the trial court is one of the specific statutory *exemptions from disclosure* contained in the public disclosure act.

Accordingly, I agree with the majority that in this case we are required to reverse the Court of Appeals and affirm the trial court.

DURHAM, J., concurs with ANDERSEN, J.

DOLLIVER, J. (dissenting)—While I agree with the views of the majority regarding the use of the privacy test of *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978), and the personal information exception in RCW 42.17-.310(1)(b), I must dissent from the result reached based on the application of RCW 42.17.310(1)(d). I believe the viewpoint of the majority undermines the purpose of the public disclosure laws by preventing public access to information concerning government activities.

The analysis of any portion of the public disclosure laws must begin with the fundamental policy stated in the act:

> [M]indful of the right of individuals to privacy and of the desirability of the efficient administration of government,

---

[3]*In re Rosier,* 105 Wn.2d 606, 618, 717 P.2d 1353 (1986) (Andersen, J., dissenting).

[4]This court cannot substitute its judgment for that of the trial court in resolving factual issues. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). Statements of fact included within conclusions of law will be treated as findings of fact. *Ferree v. Doric Co.,* 62 Wn.2d 561, 567, 383 P.2d 900 (1963); *Redmond v. Kezner,* 10 Wn. App. 332, 343–44, 517 P.2d 625 (1974).

full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.

RCW 42.17.010(11). The public disclosure act is a strongly worded mandate for broad disclosure of public records. *Laborers Int'l, Local 374 v. Aberdeen,* 31 Wn. App. 445, 449, 642 P.2d 418, *review denied,* 97 Wn.2d 1024 (1982). The purpose of the act is to promote full access to public records, to assure continuing public confidence in governmental processes, and to assure the public interest will be fully protected. To further this end, the provisions of the act are to be interpreted liberally, and the statutory exceptions from disclosure must be construed narrowly. RCW 42.17.010(11); *Hearst Corp. v. Hoppe, supra* at 128; *Columbian Pub'g Co. v. Vancouver,* 36 Wn. App. 25, 28, 671 P.2d 280 (1983). The burden of proof is on the agency seeking to prevent disclosure to demonstrate the requested information falls within an exception. RCW 42.17.340(1); *Hearst Corp.,* at 130.

The exception contained in section (1)(d) is a narrow one. The statute exempts:

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.17.310(1)(d). If this case concerned "[s]pecific intelligence information and specific investigative records" compiled by the police agencies involved, I would agree with the result reached by the majority. But this is not the case. The information sought here concerns the misconduct of agency employees, unrelated to the normal criminal investigations contemplated by the statute. There is no reason to include these personnel matters relating to job performance within the definition of "specific investigative records" simply because the records involve law enforce-

ment personnel.

Furthermore, even if the personal information could be classified as intelligence information and investigative records, the law enforcement agencies have not satisfied their burden to prove the withholding of this information is "essential to law enforcement" within the meaning of the statute. The agencies primarily rely upon the "code of silence" argument: disclosure might have a chilling effect upon the reporting of violations. The evidence in the record, however, fails to support this assertion. First, it is important to realize the information sought on appeal is the names of the officers alone, not those of the complainants or witnesses. Thus, any arguments based upon complainants' desires for confidentiality are without force in this case. The testimony at trial indicated it was rare for the officers not to know the names of the complainants against them, nor would the complainants be more reluctant to come forward if their names were publicly disclosed. Further, the "code of silence" argument assumes the officers themselves are currently a significant source of complaints against other officers, even though no support for this assertion is offered by the record. The record does indicate hundreds of complaints are filed by private citizens, including many if not most of the complaints at issue here. There was no evidence that public disclosure of the name of the officer involved would have an effect on the submission of this type of complaint.

Contrary to the majority, I believe it is the disclosure of these names which is "essential to effective law enforcement", rather than their concealment. It is important for the public to know how their law enforcement employees are performing their official duties and to know whether the standards within these agencies are being maintained and enforced. Disclosure of the names of officers involved in misconduct in the performance of their official duties would add credibility to the public's perception of the police internal affairs process.

In *Columbian Pub'g Co. v. Vancouver, supra* at 31, the

(1)(d) exception was found not to apply under very similar circumstances. At issue was a newspaper's request to the city manager of Vancouver for a copy of statements of police officers regarding the performance of the police chief. The statements had led to a vote of no confidence by the police officers' union, then copies had been given to the city manager, for him to discuss with the officers and the police chief. The court affirmed the trial court's order for the city to disclose the information, stating:

> We recognize that the Vancouver Police Department, when carrying out its law enforcement responsibilities, is [a law enforcement] agency. But even when we recognize [the city manager's] ultimate, but tenuous, law enforcement supervisory duties, in this case he was certainly not conducting the kind of investigation that the exemption requires. As we said in *Laborers Int'l Union, Local 374 v. Aberdeen,* 31 Wn. App. at 448, the "records were not compiled as a result of a specific investigation focusing with special intensity upon a particular party." This is purely a personnel matter, not an investigation in the intended sense, *i.e.,* one designed to ferret out criminal activity or to shed light on some other allegation of malfeasance. Finally, the nondisclosure of the statements was not, as we have said, essential to the protection of anyone's right to privacy, nor was it essential to effective law enforcement as the exemption requires. Construing this exemption narrowly, as again we must, we find no error.

*Columbian,* at 31. I see no reason not to adopt the same conclusion here.

Since neither the *Hearst* privacy test nor the RCW 42.17.310(1)(b) personal information exception has been found to apply here, we should not allow these same exceptions to be given effect through the back door by grafting them into the language of RCW 42.17.310(1)(d). RCW 42.17.340(2) provides:

> Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. . . .

Any consideration, however beneficially motivated, of potential negative impact on the officers involved here is not appropriate under the statute. Given this strong policy statement, and our established rule to construe any exceptions narrowly, I cannot agree the language of RCW 42.17-.310(1)(d) should be interpreted so broadly as to prevent disclosure of the names of these officers. The agencies have not sustained their burden to prove this information falls within the exception. I dissent.

UTTER and GOODLOE, JJ., concur with DOLLIVER, J.

Reconsideration denied March 7, 1988.