# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RYAN TAYLOR, | No. 55797-5-II |
| Appellant, | |
| v. | |
| STACI PATTON and CLARK COUNTY, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, J. — Staci Patton filed requests for public records relating to Ryan Taylor's prior employment at the Clark County Sheriff's Office. After the county notified Taylor about Patton's requests, Taylor filed a petition for injunctive relief to enjoin the county from releasing particular information contained in records related to an internal investigation that led to Taylor's termination from the sheriff's office. Taylor appeals the trial court's order denying his motion for preliminary or final injunction, arguing that the information is exempt from public disclosure under a provision in the Public Records Act (PRA)[1] for personal information contained in employee files. We hold that the information that Taylor seeks to enjoin does not fall under the personal information exemption, and that the trial court properly denied Taylor's request for preliminary or final injunction. Accordingly, we affirm.

---

[1] Chapter 42.56 RCW.

FACTS

Patton has filed three public records requests seeking records involving Taylor's previous employment as a deputy sheriff in Clark County. Her first request sought findings and reports regarding two internal affairs investigations conducted by the sheriff's office regarding Taylor's conduct. Clark County contacted Taylor to put him on notice that the records had been requested and provided him with a copy of the records production with the county's planned redactions. Patton then filed another request for Taylor's personnel file. Her third request sought all third party notices provided to Taylor regarding Patton's records requests.

Taylor filed a petition for injunctive relief, seeking to enjoin release of the records responsive to Patton's first two requests. His petition claimed that he had "no objection to the release of the vast majority of the requested records." Clerk's Papers at 3. However, he contended that some of the records contained "highly personal information, including the name of petitioner Taylor's counselor and an audio tape and transcript of an interview with his counselor, details concerning petitioner Taylor's separation and divorce, and descriptions or demonstrations of emotions felt by petitioner Taylor." *Id.* He objected to the production of records containing this information, along with "the audio tape of his interview conducted as part of the internal investigations," but he did not object to production of the transcript of the internal investigation interview. *Id.*

Taylor filed a motion for a temporary restraining order, asserting that his objection to the above information was based on two statutory provisions: (1) confidential communications under RCW 18.83.110, and (2) personal information exempt from disclosure under the PRA. The trial

court entered a temporary restraining order prohibiting Clark County from releasing records responsive to Patton's first two requests.

The trial court then held a hearing to determine whether the temporary restraining order should be continued. At the hearing, Taylor explained that the deputy sheriffs conducting the investigation spoke confidentially with Taylor's counselor and "incorporated" that conversation into their investigation. Verbatim Report of Proceedings (VRP) at 32. Taylor primarily argued that the basis for enjoining release of his counselor's name was because it was a confidential communication.

But Taylor was "most keen on excluding [ ] the audio tapes of his interview." *Id.* at 27. He explained that the interview with the disciplinary officers in the sheriff's office was lengthy and emotional. The trial court asked why Taylor was distinguishing between the transcript of the interview and the audio tapes, and Taylor responded,

> those tapes contain -- there's a lot of basically frankly emotions, crying, that kind of thing potentially. You know, the kind of thing that if, you know, once it's out to the public, Your Honor, there's no limiting it whatsoever. I mean it could go onto Facebook, it could go onto YouTube. I mean it could go anywhere basically.

*Id.* at 23-24. Although concerned about the audio being "broadcast over social media," Taylor conceded that "the public has every right to know all of the reasons why he was disciplined in Clark County." *Id.* at 24.

In response, Patton pointed out that the audio tapes "were part of the Clark County Sheriff's Office's investigation into the wrongdoing that led to [Taylor's] termination. And the reasons for his termination were unfortunately related to his divorce in that he did things such as improperly use Clark County equipment to -- to spy or stalk his ex-wife, etcetera." *Id.* at 36. The county did not take a position regarding Taylor's petition.

The trial court denied Taylor's motion for preliminary or final injunction because he did not establish that the records fall under an exemption for disclosure under the PRA. Taylor appeals the trial court's order denying his motion for preliminary or final injunction.

This court ordered Taylor to indicate the specific records he sought to enjoin Clark County from producing. Comm'r's Ruling (June 23, 2021). Taylor responded that he only sought to enjoin (1) "the name of his counselor," and (2) "the audio tape of his interview conducted as part of the internal investigations into his conduct (but not the transcript of this interview)." Appellant's Response to Comm'r's Ruling (July 2, 2021) (boldface omitted). This court ruled that Clark County was enjoined from releasing these two pieces of information pending this appeal, but it lifted the restraining order as to the remaining responsive records. Comm'r's Ruling (July 14, 2021).

## DISCUSSION

Taylor argues that the trial court erred by denying his petition for injunctive relief with respect to the name of his counselor and the audio tapes of his interview because this information is exempt from public disclosure under the PRA exemption for personal information in employee files. Patton argues that the trial court properly denied Taylor's petition for injunctive relief because the records were not exempt under the personal information exemption. We agree with Patton.

A. LEGAL PRINCIPLES

Under the PRA, public agencies must produce all public records upon request unless an exemption applies. RCW 42.56.070(1); *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 407, 259 P.3d 190 (2011) (plurality opinion). When an agency expects to produce

records that pertain to a specific person, that person may seek to enjoin the production under RCW 42.56.540.[2] The party seeking to enjoin the record production bears the burden of proving that an exemption applies. *Bainbridge Island Police Guild*, 172 Wn.2d at 407-08.

"The PRA is a 'strongly worded mandate for broad disclosure of public records.' " *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014) (internal quotation marks omitted) (quoting *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011)). As a result, "we must liberally construe the PRA in favor of disclosure and narrowly construe its exemptions." *Id.* at 311; RCW 42.56.030. Our review "shall take into account the policy . . . that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

Judicial review under the PRA is de novo. *Id.*; *Bainbridge Island Police Guild*, 172 Wn.2d at 407. When evaluating a PRA claim, "we stand in the same position as the trial court." *Bainbridge Island Police Guild*, 172 Wn.2d at 407; *West*, 183 Wn. App. at 311.

B. ANALYSIS

Taylor argues that the information he seeks to enjoin from record production is exempt under RCW 42.56.230(3) and RCW 42.56.050.

The PRA provides an exemption from public disclosure for "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3). Under this exemption, we

---

[2] Under RCW 42.56.540, the records may be enjoined if the trial court finds that an exemption applies and production of the records " 'would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.' " *Bainbridge Island Police Guild*, 172 Wn.2d at 420 (quoting RCW 42.56.540).

must determine "(1) whether the records contain personal information, (2) whether the employees have a privacy interest in that personal information, and (3) whether disclosure of that personal information would violate their right to privacy." *Predisik v. Spokane Sch. Dist. No. 81*, 182 Wn.2d 896, 903-04, 346 P.3d 737 (2015).

*1. Personal Information*

"Personal information" is not defined in the PRA, but our supreme court has defined "personal information" as " 'information relating to or affecting a particular individual, information associated with private concerns, or information that is not public or general.' " *Bainbridge Island Police Guild*, 172 Wn.2d at 412 (quoting *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 211, 189 P.3d 139 (2008)).

At issue here are two types of information: (1) the name of Taylor's counselor and (2) the audio of Taylor's interview conducted by the disciplinary officers as part of the internal investigation, during which Taylor apparently discusses details about his divorce. Both the name of Taylor's counselor and the details about his divorce relate to a particular individual, and therefore, they constitute personal information within the meaning of RCW 42.56.230(3). *See Bainbridge Island Police Guild*, 172 Wn.2d at 412.

*2. Right to Privacy*

"Personal information is exempt from production only when that production violates an employee's right to privacy." *Id.*; RCW 42.56.230(3). The PRA provides a test for when a person's right to privacy is violated, but it does not clearly identify when the right to privacy exists. *Bellevue John Does*, 164 Wn.2d at 212. The supreme court has concluded that "a person has a right to privacy under the PRA only in 'matter[s] concerning the private life.' " *Predisik*, 182 Wn.2d at

904 (alteration in original) (internal quotation marks omitted) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 135, 580 P.2d 246 (1978)).

The PRA's right to privacy "will not protect everything that an individual would prefer to keep private." *Id.* at 905. Rather, it protects a narrower subset of private information:

> "Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget."

*Id.* (internal quotation marks omitted) (quoting *Hearst*, 90 Wn.2d at 136). The supreme court has used this quote, from the Restatement (Second) of Torts § 652D, Comment d (1977), as a guide to determine the type of facts subject to a right to privacy. *See Predisik*, 182 Wn.2d at 905-06; *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 720-27, 748 P.2d 597 (1988) (plurality opinion).[3] In *Predisik*, the court concluded that there is no right to privacy under the PRA regarding the fact that a public employer is investigating one of its employees, but that the "[a]gencies and courts must review each responsive record and discern from its four corners whether the record discloses factual allegations that are truly of a private nature." *Predisik*, 182 Wn.2d at 906.

Regarding the name of Taylor's counselor, this information does not directly concern any misconduct or investigation beyond the fact that the disciplinary officers spoke with the counselor.

---

[3] *Predisik* was decided under the current statutory scheme for the PRA, but *Hearst* was a precursor to the current test provided in RCW 42.56.050 to determine when a right to privacy has been violated. *See Predisik*, 182 Wn.2d at 900; *Hearst*, 90 Wn.2d at 134-38; former RCW 42.17.255 (1987), *recodified as* RCW 42.56.050 (LAWS OF 1987, ch. 403, § 2). *Cowles* was similarly decided under former chapter 42.17 RCW, which was titled the public disclosure act. *Cowles*, 109 Wn.2d at 718.

But the name of the counselor specifically does not relate to the investigation. As a result, this information appears to be of a private nature, and Taylor has a right to privacy regarding this information. *See id.* at 905-06.

Regarding the audio tapes, however, in *Cowles*, the supreme court held that disclosure of a police officer's name in connection with a complaint of misconduct, substantiated after an internal investigation, does not violate the right to privacy. 109 Wn.2d at 727. " 'Instances of misconduct of a police officer while on the job are not private, intimate, personal details of the officer's life' because the misconduct 'occurred in the course of public service.' " *Bellevue John Does*, 164 Wn.2d at 213 (quoting *Cowles*, 109 Wn.2d at 726); s*ee also id.* at 215 ("when a complaint regarding misconduct during the course of public employment is substantiated or results in some sort of discipline, an employee does not have a right to privacy in the complaint."). In addition, a police officer does not have a right to privacy for actions while off duty that are improper and "bear upon his ability to perform his public office." *Cowles*, 109 Wn.2d at 727.

Therefore, Taylor does not have a right to privacy regarding the audio tapes of his interview for internal investigation by the sheriff's office. Although we have little information concerning the contents of the tapes, Taylor argues that "the subject matter of [his] interview (and the investigation as a whole) relates in part to Taylor's separation and divorce," making them a private matter. Br. of Appellant at 12. Taylor's pleadings at the trial court did not discuss the circumstances of the internal investigation, but Patton's argument at the hearing suggested that Taylor's divorce was related to the basis for the internal investigation and his subsequent termination. This means that Taylor's alleged misconduct was committed either during the course of Taylor's service or

was off duty but bears upon Taylor's ability to perform his service and, therefore, Taylor does not have a right to privacy regarding this information. *See Cowles*, 109 Wn.2d at 727.

The audio tapes of the interview and the transcripts of the interview are different records requiring separate analyses, and the county has an independent duty to produce each record unless an exemption applies. Taylor argues that the audio tapes contain more emotional and personal content than the transcripts of the interview and, thus, the tapes are subject to the personal information exemption while the transcripts are not. He states that "any *legitimate* concern of the public in the content of Taylor's interview would be satisfied by release of the transcripts of that interview." Br. of Appellant at 15. However, it does not logically follow that the transcript would not be exempt from disclosure, but the audio *with the same words* would be exempt. And Taylor has pointed to no case law to suggest that disclosure of one type of document precludes disclosure of another type of document if it has repetitive information. Because Taylor does not have a right to privacy regarding the audio tapes of his interview, it was not error for the trial court to deny his petition seeking to protect the tapes from public disclosure.

*3. Violation of Right to Privacy*

"A person's 'right to privacy' . . . is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, *and* (2) is not of legitimate concern to the public." RCW 42.56.050 (emphasis added). Both of these requirements must be shown in order for a party to prove that a person's right to privacy has been violated. *Bainbridge Island Police Guild*, 172 Wn.2d at 415-17; *West*, 183 Wn. App. at 317 n.3. "[W]hether disclosure of particular information would be highly offensive to a reasonable person must be determined on a case by case basis." *West*, 183 Wn. App. at 315.

In *Bainbridge Island Police Guild*, the supreme court explained that "the public [has] a legitimate interest in how a police department responds to and investigates [an allegation of sexual misconduct] against an officer." 172 Wn.2d at 416. The court held that disclosure of an officer's identity in relation to an unsubstantiated allegation of sexual misconduct was highly offensive. *Id.* at 414-15. But disclosure of reports with the officer's name redacted, including internal investigation documents, did not violate the officer's right to privacy, even if that would have been insufficient to actually protect the officer's identity. *Id.* at 416. "Because the nature of the investigations is a matter of legitimate public concern, disclosure of that information is not a violation of a person's right to privacy." *Id.* at 417.

Under this logic, it does not violate Taylor's right to privacy to disclose the name of his counselor in the records responsive to Patton's requests. Patton's two requests at issue call for documents related to the Clark County Sheriff's Office internal investigation into Taylor's conduct. At the hearing, Taylor explained that the deputy sheriffs conducting the investigation spoke confidentially with Taylor's counselor and "incorporated" that conversation into their investigation. VRP at 32. While we are not insensitive to the desire to keep the aspects of private matters such as these out of public view, the nature of internal investigations regarding alleged police misconduct has been found to be a matter of legitimate public concern, and Taylor's bare assertion that the name of his counselor is not a matter of legitimate public concern does not persuade us. *See Bainbridge Island Police Guild*, 172 Wn.2d at 417.[4]

---

[4] Although Taylor suggests that the name of his counselor is not of legitimate public concern, he has not given us any authority nor persuasive argument on the issue and, thus, has not established that the name of the counselor is not of legitimate public concern. *See* RAP 10.3(a)(6) (directing each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority").

Regarding the audio tapes, because the public has a legitimate concern in the investigation, even if we concluded that Taylor had a right to privacy in the audio tapes of his internal investigation interview, disclosure of the tapes would not violate this right to privacy. As the parties acknowledge, the audio tapes potentially contain more information that could provide context to inform a credibility assessment. An interested member of the public may, therefore, glean more information about the legitimacy and thoroughness of the investigation and result by listening to the audio. Furthermore, a reasonable person in Taylor's position would have understood that the audio would be subject to public disclosure and, therefore, release would not be highly offensive to a reasonable person.[5]

Because disclosure of the internal investigation documents "is not a violation of a person's right to privacy, it does not fall into the category of 'personal information' exempt under [RCW 42.56.230(3)]." *Bainbridge Island Police Guild*, 172 Wn.2d at 417-18. Therefore, Taylor has not shown that a valid exemption would apply to enjoin the records from production, and the trial court did not err by denying his petition.[6]

---

[5] Taylor's argument that release of the audio tapes is highly offensive centers on the idea that the audio would spread on social media and be damaging to Taylor in the small community where he currently works. However, RCW 42.56.550(3) directs courts that "free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." Therefore, the term "highly offensive" must mean "something more than embarrassing." *West*, 183 Wn. App. at 313. "Because police officers are entrusted with the responsibility of enforcing society's laws and protecting citizens from harm, their credibility depends upon their own personal compliance with the law and with behaviors that promote public order and citizen safety." D. W. Stephens & D. L. Carter, *Police Ethics, Integrity, and Off-Duty Behavior: Policy Issues of Officer Conduct*, *in* POLICE DEVIANCE 29 (Thomas Barker & David L. Carter eds., 1994).

[6] We need not address whether Taylor met the requirements to enjoin production of the records under RCW 43.56.540 because, in order for that provision to apply, the records must fall under a specific exemption. *Bainbridge Island Police Guild*, 172 Wn.2d at 420.

CONCLUSION

We hold that neither the name of Taylor's counselor nor the audio of his internal investigation interview are exempt from public disclosure under RCW 42.56.230(3) and RCW 42.56.050. Accordingly, we affirm the trial court's order denying Taylor's motion for preliminary or final injunction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, C.J.

PRICE, J.