135 P.3d 515 (2006)
133 Wash.App. 90
Michael FORT, Appellant,
v.
STATE of Washington DEPARTMENT OF ECOLOGY, Respondent.
No. 24039-8-III.
Court of Appeals of Washington, Division 3.
May 23, 2006.
Darren T. Burchill, Donald L. Dimmitt, Jeffers, Danielson, Sonn & Aylward, PS, Wenatchee, WA, for Appellant.
Maia D. Bellon, Atty Generals Ofc/Ecology Div., Olympia, WA, for Respondent.
SCHULTHEIS, A.C.J.
¶ 1 Michael D. Fort received a notice of regulation from the Department of Ecology (Ecology) for exceeding the amount of water allotted to him under a 1921 water rights adjudication decree. He appealed to the Pollution Control Hearings Board (the Board), seeking a favorable interpretation of the decree or application of the common law futile call doctrine. The Board granted summary judgment in favor of Ecology. The superior court denied his petition for judicial review. We conclude that the Board's decision was proper under RCW 34.05.570(3) and affirm.

*516 FACTS
¶ 2 The parties stipulated to the essential facts. The rights and priorities to the waters of Beaver Creek, the water source at issue, were adjudicated in a September 1921 decree.[1] The decree authorized Mr. Fort to divert water from Beaver Creek as a successor in interest to a class 1 water right connected to portions of his real property as well as class 8 and 9 rights associated with other portions of his land. There are 18 classes of water rights designated in the decree. Mr. Fort's class 1 right is the most senior on Beaver Creek. Beaver Creek is a tributary to the Methow River, which is a tributary to the Columbia River. Mr. Fort's point of diversion is currently the last one on Beaver Creek before the creek's confluence with the Methow River. His point of diversion is the same for his class 1, 8, and 9 water rights.
¶ 3 In 2001, insufficient water was available to satisfy all classes of water users on Beaver Creek. The decree provides that when the water supply is insufficient to supply all 18 classes, the rights of the higher classes, beginning with class 1, will be satisfied first before members of the subordinate classes will be permitted to draw water from the creek. Ecology, through the Okanogan County watermaster, therefore ordered all rights junior to class 5 to be shut off sometime between May 27, 2001 and June 10, 2001. Class 5 water rights were shut off on July 5. The watermaster advised Mr. Fort several times during this curtailment period that diversion of class 8 and 9 waters was a violation of the decree.
¶ 4 On September 10, Mr. Fort e-mailed the watermaster his water diversion records together with an electronic message stating that he was irrigating his class 8 and 9 lands along with his class 1 land. The records showed that the water diverted exceeded 2.90 cubic feet per second (cfs), the total amount of water that a class 1 right property owner is entitled to divert. That day, the watermaster inspected Mr. Fort's diversion point and observed 3.25 cfs being diverted. She posted a notice of regulation on Mr. Fort's weir directing Mr. Fort to stop exceeding his class 1 diversion rate of 2.90 cfs. For the next several days, the Beaver Creek stream patroller inspected the weir and recorded her observations: on September 11 the diversion rate was 3.36 cfs; on September 12 it was 3.57 cfs; and on September 14 it was 3.05 cfs. Based on these observed and admitted water diversions, Ecology issued Mr. Fort a penalty of $1,500. Mr. Fort appealed the notice of regulation requiring him to curtail his class 8 and class 9 water rights and requiring him to limit his diversion to 2.90 cfs in accordance with his class 1 water right and the notice of penalty. The parties filed cross-motions for summary judgment. The Board issued an order granting partial summary judgment in Ecology's favor. The order resolved all issues except the reasonableness of the $1,500 penalty. The Board dismissed the penalty portion of the case after Mr. Fort withdrew his challenge to the reasonableness of the penalty and the parties reached a stipulation ending the case.
¶ 5 Mr. Fort filed a petition for judicial review challenging the Board's order granting partial summary judgment. The Okanogan County Superior Court entered a final order denying his petition for judicial review. Mr. Fort appeals the superior court's order.

*517 DISCUSSION
¶ 6 Judicial review of the Pollution Control Hearings Board is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 587, 90 P.3d 659 (2004). Under the APA, judicial review is confined to the administrative record before the Board. Id.; RCW 34.05.558. "This court sits in the same position as the superior court and reviews the Board's decision by applying the standards of review in RCW 34.05.570 directly to the agency record." Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 77, 11 P.3d 726 (2000). "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).
¶ 7 Agency action is subject to reversal if the agency's order is outside its statutory authority or jurisdiction, if the agency has erroneously interpreted or applied the law, if the agency's order is not supported by substantial evidence, or if the agency's decision is arbitrary or capricious. RCW 34.05.570(3)(b), (d), (e), (i); Port of Seattle, 151 Wash.2d at 587-89, 90 P.3d 659. Under the "error of law" standard, the court engages in a de novo review of the agency's legal conclusions. RCW 34.05.570(3)(c), (d); City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998).
¶ 8 The Board held that,
Ecology was obligated under the plain language of the decree to regulate according to class. There is nothing inherent in the decree that excuses [Mr. Fort] from compliance with the class regulation. Nothing in the futile call doctrine, even if applicable, excuses regulation under the plain language of the decree. In short, [Mr. Fort] do[es] not have a right to take class 8 or 9 water if that class has been regulated because there is insufficient water available.
Clerk's Papers (CP) at 583.
¶ 9 Mr. Fort first contends that the Board erred by refusing to allow him to withdraw class 8 and 9 water when he can do so without interfering with the rights of superior classes. He argues that the priority system in the decree was merely imposed to ensure that lower priority rights do not interfere with a higher priority right. As proof, he points to a provision in the decree that, in the same provision setting forth the priority system by classification and curtailment, provides "that each and every party hereto ... is perpetually enjoined from interfering with the diversion and use upon said tracts in the order of their respective priorities of the amounts of water in said classification specified." CP at 77. Mr. Fort argues that since his point of diversion is farthest downstream, his diversion did not interfere with the parties' respective priorities; therefore, his withdrawal of water is not contrary to the decree. Ecology argues that the injunctive language provides that diverters are enjoined from interfering with other diversions in the order of their respective priorities, and through the decree, the respective priorities are established by class. Mr. Fort must therefore abide by the terms of the decree regulating users by class, Ecology argues, rather than by individual user. Ecology is correct.
¶ 10 A decree was entered in 1921 after adjudication. This decree established all existing water rights relating to Beaver Creek and the priority of each right. Dep't of Ecology v. Acquavella, 100 Wash.2d 651, 652, 674 P.2d 160 (1983). Therefore, the nature and extent of Mr. Fort's water rights derive from that decree. Where the provisions of the decree are clear and unambiguous, we enforce them as written. State ex rel. Cope v. Barnes, 158 Wash. 648, 649-50, 291 P. 710 (1930). All parts of the decree should be considered and given effect. Id. at 650, 291 P. 710. The decree in this case provides for a priority system in which water is regulated by class, and if there is more demand than water available, the most junior water rights (as indicated by the higher numbered classes) are curtailed first. The focus of the decree is the prioritization by class and the injunctive language is intended to discourage interference with the scheme. Basically, Mr. Fort misses the point. If conservation efforts produce added flow, then water becomes *518 available for release to lower classes situated above Mr. Fort's diversion point.
¶ 11 The decree also provides:
That the classification hereinabove set forth is subject to the following qualification: As between claimants diverting water from Beaver Creek above the confluence with Frazer Creek and claimants diverting from Frazer Creek, claimants diverting from Frazer Creek are entitled to divert water from said Creek although prior rights of diverters from Beaver Creek above its confluence with Frazer Creek do not receive all the water to which they are entitled. Claimants diverting from Frazer Creek, however, are not entitled to divert waters from Frazer Creek until prior rights diverting from Beaver Creek below its confluence with Frazer Creek have received water to which they are entitled.
CP at 85.
¶ 12 Mr. Fort asserts that this provision acknowledges that subordinate classes may divert water that does not interfere with superior classes by virtue of their diversion points. This is so, he argues, because Frazer Creek enters Beaver Creek downstream from some of the Beaver Creek diversion points, and subordinate Frazer Creek rights can be exercised even though superior rights of Beaver Creek are not met. We disagree. This express exception to the priority system undercuts his argument that he is entitled to imply a similar exception. We do not read into an adjudication decree provisions that do not exist. Barnes, 158 Wash. at 651, 291 P. 710. The express acknowledgement of a single circumstance that may affect the class system does not imply a different exception to the class system for the circumstances described by Mr. Fort. Instead, this provision recognizes that the decree's priority system must be respected regardless of whether some users can exercise their rights by virtue of their location on the creek. Likewise, the decree must be respected even though users could exploit their locations on the creek.
¶ 13 Moreover, as the Board observed, claimants were entitled to divert water from Frazer Creek even if upstream users of a higher class on Beaver Creek were unable to fully exercise their rights because a different water source was involved. See Helensdale Water Co. v. Blew, 146 Wash. 350, 353, 262 P. 958 (1928) (holding an adjudication decree is not affected by water, stream, soil, or climatic changes despite the influence these conditions have on the quantity of water available to users).
¶ 14 Mr. Fort advocates the adoption of the futile call doctrine, which has not been recognized in Washington.
The futile call doctrine provides that a senior appropriator may prevent a junior appropriator from diverting water only when doing so will be of some benefit to the senior. For example, if water is allowed to flow past the junior's point of diversion, but the stream is dry at the senior's point of diversion, shutting off ("calling") the junior will not cause the water to reach the senior. Thus, the senior's endeavor of calling the junior is futile.
San Carlos Apache Tribe v. Superior Court, 193 Ariz. 195, 972 P.2d 179, 195 n. 9 (1999) (citation omitted).
¶ 15 Mr. Fort argues that Washington courts have traditionally considered long established principles of western water law. E.g., R.D. Merrill Co. v. Pollution Control Hearings Bd., 137 Wash.2d 118, 127, 969 P.2d 458 (1999). However, the Washington Supreme Court's position is clear on this matter. "[W]ater management is a huge issue in this state. There is clearly controversy as to the best way to manage this state's water resources. However, policy decisions are the province of the Legislature, not of this court." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 17 n. 7, 43 P.3d 4 (2002). This is a matter for the legislature's consideration.
¶ 16 Mr. Fort mentioned in passing and without citation to authority that excess water that travels pasts his head gate during the regulation of his class 8 and 9 water rights is "wasted" if he is not allowed to divert the water to satisfy those rights. See Suquamish Indian Tribe v. Kitsap County, 92 Wash.App. 816, 823, 965 P.2d 636 (1998) (refusing to consider argument for which *519 party cited no authority); Johnson v. Mermis, 91 Wash.App. 127, 136, 955 P.2d 826 (1998) (holding to well established principle that passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration). Ecology points out that the issue of waste is fairly complex. See Dep't of Ecology v. Grimes, 121 Wash.2d 459, 471, 852 P.2d 1044 (1993). Moreover, Mr. Fort has not previously raised it. Pursuant to RCW 34.05.554, "[i]ssues not raised before the agency may not be raised on appeal," subject to a limited number of exceptions, none of which apply.[2]Motley-Motley, Inc. v. Pollution Control Hearings Bd., 127 Wash.App. 62, 72-75, 110 P.3d 812 (2005), review denied, 156 Wash.2d 1004, 128 P.3d 1239 (2006). This issue does not merit consideration.

CONCLUSION
¶ 17 The Board properly upheld notice of regulation requiring Mr. Fort to curtail his class 8 and class 9 water rights and limiting his diversion to 2.90 cfs in accordance with his class 1 water right. We affirm.
WE CONCUR: BROWN and KATO, JJ.
NOTES
[1] The decree reads:

"That the parties hereto and their successors in interest to the lands described ... are entitled to divert from Beaver Creek and its tributaries the amount of water specified in the classification hereinafter set forth, for beneficial use upon their several lands described herein; and that the rights and priorities of such described lands in and to the use of said water be and they hereby are established and determined as set forth in said classification; that during periods when the amount of water is insufficient to supply all classes, rights in a higher class, beginning with Class 1 shall be fully satisfied before water is given to those of a subordinate class, and in case of failure of the supply of water to completely satisfy the total amount awarded to a given class, the amount remaining for said class shall be apportioned to the appropriators in said class in the proportion which the number of cubic feet per second awarded to each person bears to the total number of cubic feet per second awarded to such class; and that each and every party hereto... is perpetually enjoined from interfering with the diversion and use upon said tracts in the order of their respective priorities of the amounts of water in said classification specified." Clerk's Papers at 77.
[2] RCW 34.05.554(1) provides:

"Issues not raised before the agency may not be raised on appeal, except to the extent that:
"(a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;
"(b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;
"(c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or
"(d) The interests of justice would be served by resolution of an issue arising from:
"(i) A change in controlling law occurring after the agency action; or
"(ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency."