[No. 26555-2-III. Division Three. November 13, 2008.]

THE CITY OF UNION GAP ET AL., *Appellants*, v. THE DEPARTMENT OF ECOLOGY, *Respondent*.

*Jeffrey D. Slothower*; and *Robert F. Noe* (of *Robert F. Noe, PLLC*), for appellants.

*Robert M. McKenna, Attorney General,* and *Bruce L. Turcott, Stephen H. North,* and *Alan M. Reichman, Assistants,* for respondent.

¶1 SWEENEY, J. — The owner of a water right relinquishes that right to the state if the water right is not used beneficially for five years. But the owner does not relinquish that right, despite nonuse, if it is claimed for some "determined future development" or for "municipal water supply purposes." Here, a developer bought water rights, intending to sell them to a city. We conclude that the sale did not take place within the required five-year period before the developer relinquished the water rights. Nor did the developer satisfy the requirements of either the "determined future development" or the "municipal water supply purposes" exceptions to the general rule of relinquishment after five years of nonuse of the water rights. We, then, affirm the summary judgment in favor of the Department of Ecology.

## FACTS

¶2 In 1999, Ahtanum Ridge Business Park, LLC, purchased property from Washington Beef, Inc. The property is

situated in Union Gap, Washington. The purchase included Washington Beef's water rights. The water rights were last used on May 27, 1995, when Washington Beef closed its slaughterhouse.

¶3 Ahtanum intended to sell the water rights to Union Gap. City officials met privately with Ahtanum's representatives in the fall of 1999 and agreed orally to buy the water rights before Ahtanum purchased them. The agreement was conceptual and did not include a purchase price, a payment method, or the quantity of water rights to be transferred.

¶4 Union Gap, nonetheless, spent about $1 million preparing and applying to transfer the rights. It submitted applications to the Yakima County Water Conservancy Board (Conservancy Board) in July 2001 to change the water rights' purpose from industrial to municipal. Ahtanum platted its property and tested the wells. On March 26, 2001, Union Gap agreed to buy and Ahtanum agreed to sell the water rights, this time in writing. But the parties could not agree on the purchase price, terms of payment, or the quantity of water supply and continued to negotiate through 2005.

PROCEDURE

¶5 The Conservancy Board approved Union Gap's application for transfer of the water rights on March 17, 2004. The Conservancy Board submitted its decision to the Department of Ecology for review pursuant to RCW 90.80.080 (requires the board to submit its findings and decision on a transfer application to the department for review). Ecology reversed the Conservancy Board's decision and denied Union Gap's application. It concluded that the water rights had reverted to the state because of an unexcused nonuse of the rights.

¶6 Ahtanum and Union Gap petitioned the Washington Pollution Control Hearings Board (Hearings Board) to review Ecology's decision denying Union Gap's application. The Hearings Board denied the petition and confirmed

Ecology's decision. Ahtanum and Union Gap then petitioned the Yakima County Superior Court to review the Hearings Board's decision. The superior court also denied the petition and affirmed the Hearings Board.

## DISCUSSION

¶7 The Administrative Procedure Act, chapter 34.05 RCW, governs our review of the Hearings Board's decision. *Fort v. Dep't of Ecology*, 133 Wn. App. 90, 95, 135 P.3d 515 (2006); *Bowers v. Pollution Control Hearings Bd.*, 103 Wn. App. 587, 595-96, 13 P.3d 1076 (2000). The pertinent record is the record before the board. RCW 34.05.558; *Fort*, 133 Wn. App. at 95. We review the board's legal conclusions de novo. *Fort*, 133 Wn. App. at 95.

¶8 We will reverse a hearings board decision if the board erroneously interpreted or applied the law. RCW 34-.05.570(3)(d). We will, however, accord substantial weight to the board's interpretation of the law where it "has specialized expertise in dealing with such issues, but we are not bound by the [board's] interpretation of a statute." *Bowers*, 103 Wn. App. at 596.

¶9 Ahtanum and Union Gap challenge the Hearings Board's order granting summary judgment to Ecology. The Hearings Board affirmed Ecology's decision reversing the Conservancy Board's approval of the water rights transfer application and concluded that Ahtanum did not show an exception that excused its nonuse of the water rights.

¶10 Ahtanum and Union Gap rely on two statutory exceptions to the general rule of relinquishment after five years of nonuse. They argue that Ahtanum's failure to use its water rights is excused because they timely claimed the rights for a "determined future development" (RCW 90.14.140(2)(c)) and because they timely claimed the rights for "municipal water supply purposes" (RCW 90.14.140(2)(d)).

¶11 Ahtanum and Union Gap also argue that the Hearings Board's summary judgment is not supported by

substantial evidence. RCW 34.05.570(3)(e). But the substantial evidence standard applies only to an agency's findings of facts. *Lee's Drywall Co. v. Dep't of Labor & Indus.*, 141 Wn. App. 859, 864, 173 P.3d 934 (2007). The Hearings Board's order here did not include findings. And findings are neither necessary nor helpful for our review of a summary judgment. *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243 (1991). There is no dispute over the material facts here, in any event. Instead, the question before us, specifically whether Ahtanum meets one of the statutory criteria to excuse nonuse, is a question of law. *Fort*, 133 Wn. App. at 95.

 ¶12 Statutory interpretation and application are also questions of law that we review de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Our goal is "to ascertain and give effect to legislative intent." *State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 158-59, 143 P.3d 618 (2006). We apply the statute's plain meaning when possible. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

 ¶13 We assess the plain meaning of a statute "viewing the words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole." *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007) (citing *Campbell & Gwinn*, 146 Wn.2d at 11). We also consider the subject, nature, and purpose of the statute. *Id.* at 146.

 ¶14 A holder of a water right relinquishes that right if the holder "voluntarily fails to beneficially use the right . . . for a period of five [consecutive] years" without sufficient cause. *R.D. Merrill Co. v. Pollution Control Hearings Bd.*, 137 Wn.2d 118, 139, 969 P.2d 458 (1999) (citing RCW 90.14.130, .160-.180). The party asserting statutory relinquishment, here Ecology, must prove nonuse for the five-year period. *Id.* at 140. Ecology has shown the requisite

nonuse, and Ahtanum and Union Gap do not argue otherwise. The burden then shifts to Ahtanum to show a legally sufficient cause for nonuse or an exception to the relinquishment rule. Those causes and exceptions are set out in RCW 90.14.140. *Id.* at 140-41.

¶15 We begin with a discussion of the purpose of this statutory scheme since we will try to read the statutory scheme in a way that furthers that purpose.

> The purpose of the relinquishment statutes is "to cause a return to the state of any water rights which are no longer exercised by putting said waters to beneficial use." RCW 90.14.010. RCW 90.14.020(3) provides that "[a] strong beneficial use requirement as a condition precedent to the continued ownership of a right to withdraw or divert water is essential to the orderly development of the state . . . ." RCW 90.14.160 through .180 state that where water rights have not been beneficially used for five continuous years, or have been abandoned, "said right or portion thereof shall revert to the state, and the waters affected by said right shall become available for appropriation . . . ." Given these purpose and policy statements, and the express provisions of RCW 90.14.160 through .180, the Legislature intended that water be beneficially used, and, if not, that water rights be returned to the state so that the water will be available for appropriation by others who will put the water to beneficial use.

*Id.* at 140 (alterations in original).

¶16 We narrowly construe exceptions to statutory provisions. *Id.* Narrow construction ensures that we give effect to the legislative intent underlying the general provisions. *Id.* Narrow judicial construction means we will choose, when a choice is available, a restrictive interpretation over a broad, more liberal interpretation. *Pac. Nw. Annual Conference of United Methodist Church v. Walla Walla County*, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973).

¶17 Ahtanum and Union Gap rely on two exceptions to the general rule of relinquishment after five years of nonuse. They assert that the water rights were claimed for a "determined future development" (RCW 90.14.140(2)(c)),

and they assert that the rights were claimed for "municipal water supply purposes" (RCW 90.14.140(2)(d)). We consider each in order.

"DETERMINED FUTURE DEVELOPMENT" EXCEPTION

¶18 A water right will not be relinquished if it is "claimed for a determined future development to take place . . . within fifteen years of . . . the most recent beneficial use of the water right." RCW 90.14.140(2)(c). A plan is "determined" when it is fixed conclusively or authoritatively. *R.D. Merrill Co.*, 137 Wn.2d at 142. A plan must be "determined" within five years of the most recent beneficial use of the water right. *Id.* at 143. Ahtanum claims its intent and its fall 1999 oral agreement to sell the water rights to Union Gap was a "determined future development" plan that satisfies an exception to relinquishment.

¶19 Ecology relies on *R.D. Merrill Co.* to argue that a plan to sell water rights is not a "development" under RCW 90.14.140(2)(c) and, therefore, this exception does not apply. *Id.* at 145 (referring to developments as projects).

¶20 Ahtanum begins by suggesting that the term "claimed" in RCW 90.14.140(2)(c) should be interpreted broadly so as to accommodate any dictionary definition. And that suggestion would mean that either it or Union Gap need only assert something or state as a fact one's belief. Appellant's Br. at 47. So, here, Ahtanum's or Union Gap's "claim" for future development or for municipal use is enough to satisfy the requirements of the statutory exceptions. Ecology responds that this interpretation is strained. Ecology contends that a user must first own a water right before it can claim that right to satisfy a statutory exception to relinquishment.

¶21 Ahtanum also suggests that anyone may claim a water right for a determined future development. Ahtanum argued that it, as the water rights owner, "claimed" its rights for a "determined future development" when it, among other things, transferred control over the rights to

Union Gap and began developing its business park without using its water rights. It also argued that Union Gap claimed the rights for a determined future development, in part, by applying to transfer the rights and developing an ordinance to pay for those rights.

¶22 The court's decision in *R.D. Merrill Co.* is helpful. There, the court required an objective showing that a determined future development exists; specifically, "some affirmative steps toward realization of the fixed development plans must occur." *R.D. Merrill Co.*, 137 Wn.2d at 146. The court set out a list of factors that would serve as objective evidence indicating actual implementation of a development. They include "applying for necessary county and other permits, notifying the Department [of Ecology] of plans to use the water right in connection with a future development, actual physical development consistent with the fixed development plans such as clearing land or commencing construction, and acquiring additional lands, rights, or materials needed to implement the determined development plan." *Id.* Implicit in the court's discussion is the notion that, first of all, the claim is for use of a water right actually held by the person or entity claiming the exception; and second, the claim is for some anticipated use of that right by the holder of that right, here Ahtanum. We conclude, then, that Ahtanum must show some determined future development, as opposed to a bald statement that a development exists, to assert the exception to the general rule of relinquishment. *See id.* at 142, 146. And it has not done so.

¶23 RCW 90.14.160 through .180 set out the general relinquishment rule. Those statutes provide that "[a]ny person entitled to divert or withdraw waters of the state" will relinquish his or her right if he or she "voluntarily fails, without sufficient cause, to beneficially use" the right. RCW 90.14.160-.180. The only person who risks losing a water right is the person entitled to the right—the owner of the water right. And, of course, the water right owner is also the only entity who should bear the burden of proving that it

should retain the water right. A water right owner avoids relinquishment only by showing sufficient cause or by the application of an exception. RCW 90.14.140. The exceptions asserted by Ahtanum, therefore, required *Ahtanum* to act—to claim its rights for a determined future development. RCW 90.14.140(2)(c).

¶24 The *R.D. Merrill Co.* court also suggests claims must be made by the holder of the water right: "the *water right holder* must have a firm definitive plan in order to fall within the exception." *R.D. Merrill Co.*, 137 Wn.2d at 142 (emphasis added). And to implement a development plan, the court also concluded that "the *water right holder* must proceed in the exercise of reasonable due diligence within the 15-year period." *Id.* at 146 (emphasis added).

¶25 Our interpretation of RCW 90.14.140(2)(c) furthers the purpose of this statutory scheme. The water rights owner (here, Ahtanum) benefits from the beneficial use of the water it is entitled to and bears the burden of justifying its failure to use its water beneficially. In other words, Ahtanum is responsible for its rights, not Union Gap. And so it is the water rights owner who must demonstrate the existence of a "determined future development." RCW 90.14.140(2)(c).

¶26 We disagree with Ahtanum that its plan to sell the water rights to Union Gap, alone, satisfied the requirements of a "determined future development." *See R.D. Merrill Co.*, 137 Wn.2d at 142-46. "Development" is a land-use-type of development. In *R.D. Merrill Co.*, the court noted that a future development encompasses "the possibility of future development which may occur after the five years' nonuse period. While the actual development need not occur within the five years' nonuse period, there must be fixed development plans within that period." *Id.* at 143. And objective evidence indicating implementation includes "actual physical development consistent with the fixed development plans such as *clearing land or commencing construction*." *Id.* at 146 (emphasis added). Thus, "development," as used in this exception, refers to the development

(or possible development) of land. The potential sale to Union Gap is not a "determined future development." Ahtanum, then, did not show that its nonuse is excused by RCW 90.14.140(2)(c).

"MUNICIPAL WATER SUPPLY PURPOSES" EXCEPTION

¶27 Ahtanum next contends that its failure to use its water rights is excused because either it or Union Gap claimed the rights for municipal water supply purposes pursuant to RCW 90.14.140(2)(d).

¶28 A water right will not be relinquished "[i]f such right is claimed for municipal water supply purposes under chapter 90.03 RCW." RCW 90.14.140(2)(d). We review related provisions of a statute together and harmonize them, if possible. *State v. Keller*, 143 Wn.2d 267, 277, 19 P.3d 1030 (2001). And, when the same word is used in different parts of a statute, the word's " 'meaning is presumed to be the same throughout.' " *Welch v. Southland Corp.*, 134 Wn.2d 629, 636, 952 P.2d 162 (1998) (internal quotation marks omitted) (quoting *Cowles Publ'g Co. v. Wash. State Patrol*, 109 Wn.2d 712, 722, 748 P.2d 597 (1988)). RCW 90.14.140(2)(c) and (d) are related provisions. And so our earlier discussion about the word "claimed" applies here. And the statutory scheme again assumes that the exception is asserted by the water right owner.

¶29 Here, Union Gap asserts a claim of municipal use but Union Gap does not own the water rights. Ahtanum owns the rights. And, moreover, the owner's claim must be made *before* five years of nonuse passes. *Cf. R.D. Merrill Co.*, 137 Wn.2d at 143. In other words, this exception can save Ahtanum's rights from relinquishment for nonuse only when it, the owner of the water rights, can demonstrate that it timely chose to assert its water rights for municipal water supply purposes.

¶30 Again, the language of the statutory scheme supports this interpretation. "Municipal water supply purposes" requires a showing of a specific beneficial use:

522

[A] beneficial use of water: (a) For residential purposes through
fifteen or more residential service connections or for providing
residential use of water for a nonresidential population that is,
on average, at least twenty-five people for at least sixty days a
year; (b) for governmental or governmental proprietary pur-
poses by a city, town, public utility district, county, sewer
district, or water district; or (c) indirectly for the purposes in (a)
or (b) of this subsection through the delivery of treated or raw
water to a public water system for such use.

RCW 90.03.015(4).

¶31 Ahtanum contends that it demonstrated that it
claimed its rights for municipal water supply purposes in
1999 by decommissioning its wells, giving Union Gap
control over the rights, and developing its land without
using the water rights. We disagree. Ahtanum gave Union
Gap some control at an unknown time because it did not
want to pay the cost of transferring the rights. Allowing
Union Gap to "control" the rights, then, had less to do with
asserting the rights for municipal water supply purposes
and more to do with avoiding the cost of satisfying a
condition precedent to the parties' agreement. The parties'
purchase-sale agreement was contingent on Ecology ap-
proving the transfer. Ahtanum was obligated to assert the
rights for municipal water supply purposes only after
Ecology approved the transfer. But Ecology denied the
transfer.

¶32 Ahtanum and Union Gap also maintain that Union
Gap showed that Ahtanum's rights were claimed for mu-
nicipal water supply purposes when Union Gap filed an
application to change the purpose of the rights from indus-
trial to municipal. But again, only Ahtanum, the water
rights owner, can claim the exception to relinquishment.
*See R.D. Merrill Co.*, 137 Wn.2d at 142, 146. And even if
Union Gap could claim the rights for such purposes, its
"claim" was untimely. *Cf. id.* at 143. Union Gap filed the
application in July 2001, more than six years after the
rights were last beneficially used.

¶33 Ahtanum did not show that its failure to use its
water rights is excused by RCW 90.14.140(2)(d). The Hear-

ings Board, therefore, properly entered summary judgment in favor of Ecology.

¶34 We affirm summary judgment to Ecology. Ahtanum relinquished its water rights to the state.

BROWN and KORSMO, JJ., concur.

Reconsideration denied March 12, 2009.