IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

EDWARD KILDUFF,

                 Appellant,

          v.

SAN JUAN COUNTY, a political
subdivision of the State of Washington,
and JAMIE STEPHENS in his capacity
as San Juan County Council Member
and San Juan County Public Records
Officer,

                 Respondent.

No. 82711-1-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Edward Kilduff appeals the trial court's order dismissing his Public Records Act (PRA) complaint. He argues that the trial court erred in finding that San Juan County satisfied his public records request. Kilduff also claims that the trial court abused its discretion by denying a recusal request, denying a request to present new evidence, and excluding testimony related to the underlying investigation of an Improper Governmental Action (IGA). The Washington Coalition for Open Government (WCOG) filed an amici curiae brief in support of Kilduff. The trial court did not abuse its discretion. We affirm the dismissal of Kilduff's PRA complaint.

FACTS

Chris Laws was a San Juan County (County) code enforcement officer. In 2014, Laws began a code enforcement investigation related to the designation of a local

Citations and pin cites are based on the Westlaw online version of the cited material.

wetland.

In January 2015, Laws filed an improper governmental action (IGA) complaint with County Prosecutor Randall Gaylord, alleging that a County employee engaged in misconduct related to the wetland designation. Gaylord investigated[1] Laws' complaint and issued a final IGA report in February 2015.

The next month, the County received a Public Records Act (PRA) request from a local land use consultant, Sheryl Albritton, for the code enforcement file.[2] During the Albritton PRA request, county employees became aware that Laws, as the custodian of the related code enforcement file, included some of his personal items related to the IGA complaint into the code enforcement file.

On May 12, 2015, Laws' supervisor instructed him to remove the personal items from the file and he declined to do so. They consulted with Gaylord by phone and all agreed no documents would be destroyed. The next day, legal counsel for Laws' union and Gaylord discussed the need to have personal items taken out of the enforcement code file and agreed that Gaylord's assistant would handle the task. The personal items dealt with confidential records concerning the IGA that Gaylord's office was already familiar with. Gaylord testified that, as the custodian of the IGA file, he had his own copy of Laws' draft notes but expected that Laws would keep his own personal file related to his IGA complaint.

On the morning of May 20, Gaylord's assistant removed Laws' personal items from the IGA file and those files were returned to him. That same day, Laws

---

[1] The County conducted the investigation into IGA pursuant to the Local Government Whistleblower Protection Act, Ch. 42.41 RCW.
[2] Kilduff's attorneys also represented Sheryl Albritton in her PRA lawsuit in 2015.

approached his friend Edward Kilduff. Kilduff testified that Laws was upset that his supervisor asked him to remove items from an official file to a personal file. Laws showed Kilduff a copy of what appeared to be Laws' code enforcement file and, according to Kilduff, Laws said the file was at the moment being torn apart by the County and segregated. Laws asked Kilduff to file a public records request.

In the afternoon of May 20, at 3:45 p.m., Kilduff submitted a PRA request related to the wetlands classification dispute and the subsequent IGA investigation. Kilduff identified the specific County Department of Community Development (DCD) code enforcement file associated with the wetlands dispute and requested copies of "all documents, correspondence, memos, statements, reports, and other contents" of that file. Kilduff also requested copies of "all documents, memos, statements, reports, correspondence and other records associated with the investigation of improper governmental action, related to the above referenced code enforcement file."

The County recognized and treated Kilduff's submission under the PRA. Sally Rogers, the public records clerk, forwarded the request to Gaylord and the director of the DCD. On May 26, Rogers sent Kilduff an email acknowledging receipt of his request and to "expect a response within the next 5-10 business days." Gaylord called Kilduff on May 28 to discuss his broad request as it related to the IGA. Gaylord and Kilduff dispute what was agreed to in the phone conversation.

According to Gaylord, he identified himself as the custodian of the IGA file, which contained a final IGA report. He explained that a copy of that report had been redacted to protect the name of the whistleblower and had been given to another requester (Albritton), and the same could be provided to Kilduff to expedite his request. Gaylord

3

further explained that all the documents Gaylord relied upon in preparing the report were listed in the report and Kilduff could further request any of those documents. According to Gaylord, Kilduff "agreed that obtaining only the final report was an acceptable way to proceed, and that if he desired to obtain additional documents from the file after reviewing the final report, he would contact me and let me know as part of a new public records request." Gaylord testified that Kilduff agreed to proceed accordingly.

Kilduff's memory of the phone conversation was less precise. He acknowledged that his phone records reminded him that the call took place on May 28 and not on June 12, which is what he had previously submitted in a declaration a year earlier. When asked later in an evidentiary hearing if there was discussion on redactions or withholdings during the phone call, Kilduff said, "I don't recall. Could have been. I don't recall." In Kilduff's earlier declaration he stated that Gaylord was going to send him the IGA report "with the name of the person who had made the complaint redacted and that this was the same way it had been redacted when it was produced to another requestor Sheryl Albritton." In his declaration, Kilduff explained he told Gaylord "something to the effect of 'I can't say that your redactions are ok until I see them, but sure, go ahead and send it to me.'" Kilduff testified that Gaylord did most of the talking and Kilduff did not say much at all, and while he did "not necessarily remember chapter and verse of what was said," he "distinctly" remembered "what was not agreed to." Kilduff did not view the report as a substitute for anything he had requested.

Immediately after the phone call, Gaylord emailed Rogers:

I have just spoken with Mr. Kilduff by phone and he and I agreed that we would proceed with you providing him with a copy of the final report

4

redacted as you did for Albritton. Only the final report for now, if he wants more he will call me and I'll have to deal with it and make further redactions, etc.

On June 2, Rogers emailed Kilduff the contents of the code enforcement file and told him that he should expect the second set of records related to the improper governmental action (IGA) in two weeks. After returning from taking some personal time off, Rogers emailed Kilduff the IGA report on June 12:

Ed,

In final response to your public records request received on 5/20/15 for the remaining document, ("for copies of all documents, memos, statements, reports, correspondence and other records associated with the investigation of improper governmental action, related to the above referenced code enforcement file . . . )" per Randy Gaylord he spoke to you by phone it was agreed that the County would proceed with providing a copy of the final report redacted as done for the response to Ms. Albritton's public records request.

Attached is a memorandum dated 3/11/15 from Randall K. Gaylord, RE: Report on IGA Report dated January 21, 2015. The attachment has the name redacted of the person making the report pursuant to RCW 42.41.030. The identity of a reporting person is to be kept confidential to the extent possible under law, unless the employee authorized the disclosure of his or her identity in writing. RCW 42.41.030(7).

This email response and attachment fulfills your public records request. If you have any questions related to this request or believe we should have provided additional documents, please let me know.

Kilduff never contacted Rogers or Gaylord with any questions.

PROCEDURAL HISTORY

On June 1, 2016, Kilduff sued San Juan County alleging that it violated the PRA by failing to conduct a reasonable search for responsive records and silently withholding records without an exemption. In the same suit, Kilduff initiated a quo warranto action to oust a Snohomish County councilmember.

The trial court held an evidentiary hearing on Kilduff's claims over three days between February and November 2017.[3]

After closing arguments, the court indicated that a procedural issue of exhaustion of administrative remedies might preclude its ruling on the facts of the PRA issue. At issue was San Juan County Code (SJCC) 2.108.130, which required requesters to appeal the denial of a records request with the County before filing a PRA lawsuit. On May 28, 2018, the trial court dismissed Kilduff's PRA claims, concluding that Kilduff failed to exhaust administrative appeals according to SJCC 2.108.130. The court also dismissed the ouster action. The court awarded sanctions under CR 11 and costs under RCW 4.84.185 against Kilduff and his attorneys for bringing a frivolous lawsuit.

Kilduff appealed directly to the Washington State Supreme Court. Kilduff v. San Juan County, 194 Wn.2d 859, 453 P.3d 719 (2019). The Supreme Court held that SJCC 2.108.130 was invalid because the PRA did not authorize San Juan County to create an additional administrative exhaustion procedure. Id. at 867-68. The court therefore concluded that the trial court's dismissal of Kilduff's PRA claim was improper. Id. at 868. The court affirmed the dismissal of the ouster action, but held that the trial court abused its discretion when it awarded CR 11 sanctions and costs. Id. at 874-75.

The court noted that the trial court did not make any finding as to whether Gaylord or Kilduff was more credible on the issue of whether Kilduff agreed to modify his request. Id. at 864. The court remanded to the trial court for further proceedings. Id. at 879.

On remand, in April 2020, Kilduff moved for recusal of the judge, claiming that

---

[3] An earlier hearing occurred on September 15, 2016, but that was primarily related to an issue unrelated to this appeal.

6

the court "went out of its way to improperly sanction" Kilduff and his attorneys and those sanctions were reversed by the Supreme Court. The trial court denied Kilduff's request. Kilduff also requested to have a "live rehearing" by having witnesses "reappear and give testimony" because the witnesses had testified more than three years prior. The judge also denied this request but permitted the parties to make renewed closing arguments.

The court entered multiple findings of facts and conclusions of law. With regard to the code enforcement file, the court found that the County tendered Kilduff with the entire file as it existed at the time of Kilduff's request. As to the IGA-related items, the court found Gaylord's testimony more persuasive than Kilduff's testimony and that Kilduff agreed to modify his request. The court concluded that the County had satisfied Kilduff's records request and complied with the PRA. The trial court dismissed Kilduff's complaint. The court awarded the County its costs and fees pursuant to RCW 4.84.080. Kilduff appealed back to the Supreme Court, which transferred the matter to our court.

DISCUSSION

Standard of Review

We first address a dispute related to the standard of review. Kilduff, along with amicus, contend that appellate courts are not required to defer to trial court findings of pure fact based on disputed testimony in PRA cases. We disagree.

Under the PRA, "Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo." RCW 42.56.550(3).[4] This court considered a similar argument in Zink v. City of Mesa, 140 Wn. App. 328, 336-37, 166 P.3d 738 (2007). The Zink court examined whether de novo review provided in Former

_____

[4] Because the relevant language in RCW 42.56.550 (2011) and the current statute did not change, we cite to the current statute.

7

RCW 42.17.340(3)[5] pertains to appellate review of a trial court's findings and conclusions following a show cause hearing at which live testimony is presented." Id. at 336. The Zinks urged Division Three of this court to engage in de novo review of the testimonial record, enter findings on the alleged PDA violations, and impose the appropriate remedy. Id. The Zink court rejected that request for three reasons.

First, our Supreme Court had recognized de novo appellate review under the PDA only where agency action is being reviewed solely on a documentary record. Id. See O'Connor v. Dep't of Soc. & Health Servs., 143 Wn.2d 895, 904, 25 P.3d 426 (2001) (noting, "'[t]he appellate court stands in the same position as the trial court where the record consists *only* of affidavits, memoranda of law, and other documentary evidence'" (emphasis added) (quoting Progressive Animal Welfare Soc'y v. Univ. of Washington, 125 Wn.2d 243, 252, 884 P.2d 592 (1994))). See also Amren v. City of Kalama, 131 Wn.2d 25, 32, 929 P.2d 389 (1997) (holding, "[b]ecause the trial court decided this case on the basis of affidavits, this court will review its decision de novo.").

Second, courts recognize the general rule that "[w]hen a trial court hears live testimony and judges the credibility of the witnesses, appellate courts consistently afford deference to its determinations of fact." Zink, 140 Wn. App. at 336.

Third, the "provision for de novo review in former RCW 42.17.340(3) does not supplant this general principle, but rather serves to negate the usual deference that courts give to an agency's discretion in interpreting the rules governing it." Id. at 337. The Zink court held that "while we review de novo all questions regarding the City's obligations under the PDA, we review the trial court's findings of fact based on the

---

[5] Provisions of the Public Disclosure Act were subsequently re-codified in the Public Records Act, chapter 42.56 RCW, effective July 1, 2006.

8

testimonial record to determine if there is substantial evidence to support them." Id. Our Supreme Court has specifically cited to Zink when stating that findings of fact based on a live testimonial record are reviewed for substantial evidence. See Washington Pub. Employees Ass'n v. Washington State Ctr. for Childhood Deafness & Hearing Loss, 194 Wn.2d 484, 493, 450 P.3d 601 (2019); Lyft, Inc. v. City of Seattle, 190 Wn.2d 769, 791, 418 P.3d 102 (2018).

To support their claim, that this court is not required to defer to a trial court's findings, Kilduff and amicus rely on Cowles v. State Patrol, 109 Wn.2d 712, 748 P.2d 597 (1988). They contend "seven out of nine justices [in Cowles] refused to be constrained by the trial court's findings of fact based on live testimony, but instead engaged in independent de novo review." This mischaracterizes Cowles.

In Cowles, the court reinstated a decision of the trial court, which found that names of individuals involved in state agency investigations were exempt from disclosure under the PRA. Cowles, 109 Wn.2d at 716. Both the plurality and concurring opinions deferred to the trial court's findings of fact. The plurality opinion from four justices defined the court's inquiry as, "whether the evidence supports the trial court's findings that nondisclosure is necessary" and noted that the trial court's findings about evidence was a "factual verity on appeal." Id. at 728-29. The concurrence stated that despite disagreeing with the majority about the scope of PRA exemptions, his decision was "constrained by the trial court's findings and conclusions" about the evidence. Id. at 734 (Anderson, J. concurring). Justice Durham joined in Anderson's concurrence. The concurrence also specifically noted that "[t]his court cannot substitute its judgment for that of the trial court in resolving factual issues." Id. at 734 (Anderson,

J. concurring) n.2. The dissent from three justices disagreed with the application of the statutory personal information exemption without reference to the trial court making findings of fact. Id. at 734-38 (Dolliver, J. dissent). None of the opinions in Cowles analyzed the standard of review. Kilduff and amicus' reliance on Cowles is unavailing.

Kilduff and amicus next argue that any deference to the trial court's findings "should be limited to findings of pure fact based only on witness testimony." Kilduff essentially asks this court to assess which findings of fact are based only on witness testimony and which are based solely on the documentary record. In addition to the impracticality of attempting to disentangle a trial court's findings in this way, Kilduff provides no legal support for this argument. We therefore reject Kilduff and amicus' argument. PacifiCorp v. Washington Utilities & Transp. Comm'n, 194 Wn. App. 571, 594, 376 P.3d 389 (2016) (argument fails where a party fails to cite relevant authority).

Kilduff also claims that the County's failure to correspond with him in writing instigated the need for live testimony and without these improper actions his PRA challenge would merit de novo review. We disagree.

Kilduff turns to the PRA's model rules for support. Although the model rules are advisory only and nonbinding, our Supreme Court has repeatedly cited to the rules when interpreting provisions of the PRA. Kilduff, 194 Wn.2d at 873. Kilduff claims that the County "failed to properly document Kilduff's alleged oral agreement to significantly narrow the request." Kilduff, citing WAC 44-14-040(4)(c)(i) and WAC 44-14-04003(4), suggests Gaylord should not have telephoned Kilduff in the first place and failed to follow-up by sending an email directly to Kilduff memorializing their conversation.

WAC 44-14-040(4)(c)(i) advises that upon receipt of a records request, an

agency may ask for clarification of a request that is unclear and that "such clarification may be requested and provided by telephone, and memorialized in writing." WAC 44-14-04003(4) addresses communications with a requestor and states, in relevant part, that "when an agency receives a large or unclear request, the agency should communicate with the requestor to clarify the request," and "[i]f the request is clarified or modified orally, the public records officer or designee should memorialize the communication in writing."

Contrary to what Kilduff suggests, it was proper under the model rules for Gaylord to clarify Kilduff's request with him over the telephone. Gaylord then "memorialized in writing" Kilduff's modification in his email to Rogers, who, in turn, memorialized the agreement in her correspondence with Kilduff. Gaylord explained that the reason he did not email Kilduff directly was because the County preferred to have records communications go through the public records clerk and he wanted something more formal such as the transmittal from Rogers that was eventually sent. While perhaps it may have been better to have had Gaylord directly email Kilduff after their phone conversation, under these facts, there was nothing improper in the way the County memorialized the modified request.[6]

Kilduff also contends that we should review this case de novo because the trial court was relying on documentary evidence—including transcripts of witness testimony from three years earlier—to create its findings of fact.

In addition to the transcripts, declarations, exhibits, briefing, and renewed closing

---

[6] Additionally, Kilduff relies on speculation to suggest that, absent the oral communication, there would have been no need for live testimony and this court's review would only be de novo. We do not address this hypothetical scenario when the record before this court includes an evidentiary hearing.

arguments, the record also indicates the trial judge, during re-argument in September 2020, referenced his own notes from the previous evidentiary hearing. Kilduff does not cite to anything in the record to support his assumption that because the testimony was three years old, the trial court's method of reviewing the record and refreshing his memory was unreliable.

We apply the substantial evidence test to our review of the trial court's findings of facts and follow the standard of review put forth in Zink.

Code Enforcement File

Without identifying any specific finding of fact he is challenging, Kilduff argues generally that the trial court erred in finding that the County proved it had removed records from the code enforcement file prior to the time of Kilduff's request. We disagree.

"A separate assignment of error for each finding of fact a party contends was improperly made must also be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). The State contends Kilduff's assignments of error are insufficient because Kilduff does not specify which findings of fact are in error. We conclude that Kilduff's claimed error was clearly disclosed in the associated issue.

Substantively, it appears Kilduff challenges the court's finding number six:

On the morning of May 20, 2015, certain items which had earlier been put in the code enforcement file by the Code Enforcement Officer had been segregated by Randall Gaylord's assistant into a separate file. At the time of plaintiff's PRA request, the code enforcement file no longer contained material concerning a report of Improper Governmental Action (IGA report) because that material had been removed and placed in a

separately labeled file which was returned to the Code Enforcement Officer.

The trial court found that Rogers sent Kilduff the code enforcement file "as it existed at the time of the request." The evidence supported this finding. Gaylord testified that in the morning of May 20, 2015, his legal assistant removed items related to the IGA matter that were personal to Laws from the code enforcement file and that file was returned to DCD. Laws saw Kilduff on May 20 with a copy of what was purportedly Laws' code enforcement file. According to Kilduff, Laws said the file was at the moment being torn apart within the County and segregated. It was because of this conversation that Kilduff submitted his PRA request that afternoon at 3:45pm. Rogers testified that, in response, she sent all 45 pages of the code enforcement file to Kilduff.

Kilduff attempted to rebut the County's evidence that he received copies of the entire code enforcement file. Because Laws had shown Kilduff a file he believed was the code enforcement file prior to Kilduff's request, Kilduff believed there were additional documents the County refused to disclose.

To support his argument that the County did not satisfy his request for all the contents of the code enforcement file, Kilduff submitted two documents to the trial court that he did not receive as a response to his PRA request:[7] a January 2015 memo to Laws from County planner, Annie Matsumoto-Grah, and a May 2015 email from Laws' coworker, Colin Maycock.

The Matsumoto-Grah memo explained her involvement in the wetland review

---

[7] Kilduff's attorney had these documents because he was also the attorney for the earlier PRA lawsuit filed by Albritton. The record also indicates that Kilduff at some time obtained copies of the items as well.

13

process.[8]  This was one of the documents upon which Gaylord relied upon to create his IGA report.  The Maycock email, sent to four people include Laws, purportedly described what was discussed at the May 12, 2015 meeting where Laws' supervisor directed Laws to separate out his personal documents related to the IGA from the code enforcement file.  Neither Maycock nor any of the recipients of the email filed declarations or testified at the evidentiary hearing.  It is unknown if the email was sent to County email addresses.

The record does not establish that the Matsumoto-Grah memo or Maycock email were in the code enforcement file *as it existed at the time of Kilduff's request*.  There was substantial evidence in the record that supported the trial court's finding that, before Kilduff submitted his PRA request, the County on the morning of May 20, 2015 had removed material concerning the IGA and returned it to the enforcement code officer.

Kilduff also assigns error to the trial court's "fail[ure] to make any finding that the removed documents (which had not been reviewed by the trial court and which the County never identified) were not responsive to the PRA request."  The documents Kilduff presented, the Grah-Matsumoto memo and the Maycock email, were not code enforcement documents.

---

[8] There are two versions of this memo.  One is dated January 22, 2015, and one is dated January 26, 2015.  Kilduff makes conclusory statements without any citations to the record, except in a footnote, that the County failed to provide the "original" January 22, 2015 memo.  In the footnote, Kilduff suggests that the County "purposely destroyed" the memo in the original format.  Other than pointing to the date difference, Kilduff does not claim that these documents were substantially different or explain where he obtained the January 22, 2015 version.  "[P]lacing an argument . . . in a footnote is, at best, ambiguous or equivocal as to whether the issue is truly intended to be part of the appeal."  State v. Johnson, 69 Wn. App. 189, 194 n. 4, 847 P.2d 960 (1993).  "'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'"  Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 872, 419 P.3d 447 (2018) (quoting Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996)).

Kilduff suggests that the trial court should have reviewed the separated file that was returned to Laws. At the evidentiary hearing on February 17, 2017, Kilduff's counsel asked Gaylord to identify the information that was pulled from the code enforcement file. Besides previously explaining the items were material personal to Laws and related to the IGA, Gaylord said, "I feel constrained not to say anything that would give the identity of who the whistleblower is." The County attorney objected to the question on the grounds it calls for disclosure of information protected by RCW 42.41.030[9] and that the records were not subject to the records request. Gaylord interjected, "If we want to get through this, and the judge wants to see what [was separated from the code enforcement file], they can be provided under seal to the judge." The court asked what Kilduff's counsel suggested. Counsel responded:

> Obviously today we have an evidentiary hearing. Your Honor may or may not want to rule. Yes, I think if there are records pulled out that witnesses are saying they either cannot explain or don't remember it would be incumbent upon them to provide Your Honor in camera in [sic] un-redacted form all the things pulled out of Mr. Laws' file.
> Maybe we can get at this another way and wrap this up. But I am very disturbed when I'm told, quote, personal information is pulled out and no one can talk about it. Because we are here to talk about whether or not they replied to the IGA.

Counsel then went on and began asking Gaylord about the Maycock email. No mention of an in camera review was brought up again until at the continuation of the hearing on November 1, 2017. The following exchange took place between Kilduff's counsel and Gaylord:

> Q. Okay. Since the last hearing have you reviewed the contents of what you call the personnel file of Mr. Laws?

---

[9] RCW 42.41.030(7) protects local government whistleblowers from identification: "The identity of a reporting employee shall be kept confidential to the extent possible under law, unless the employee authorizes the disclosure of his or her identity in writing."

A. I have skimmed through them.

Q. Okay. During the prior – your prior testimony, you suggested that a way of resolving this matter would be for that file to be presented to the court for an in-camera review. Has that been done?

A. Not to my knowledge.

Q. But you do recall suggesting that that was a possible avenue for resolution of this?

A. Well, I'm not sure if it's an avenue for resolution of the entire matter, but it was an avenue for resolution of a certain line of questions that were presented to me.

Kilduff's counsel did not request an in camera review. The discussion about a possible in camera review does not establish that the trial court was required to make any additional findings, including a finding that the County was not responsive to Kilduff's request for the code enforcement file as it existed at the time of his request.

Substantial evidence supported the trial court's finding that the County proved it had removed records from the code enforcement file prior to the time of Kilduff's request. The trial court did not err in finding that the County provided Kilduff with the contents of the code enforcement file.

### Modified PRA Request

Kilduff next contends that the trial court erred in finding that he agreed to limit his PRA request during his May 2015 phone call with Gaylord. Reviewing under the substantial evidence test, we look to the record to see if there is a "sufficient quantum of evidence to persuade a fair-minded person of the truth of the declared premise." Chelius v. Questar Microsystems, Inc., 107 Wn. App. 678, 682, 27 P.3d 681 (2001).

Based on the record, there was substantial evidence before the trial court that Kilduff agreed to modify his PRA request.

The trial court found that "the evidence provided by the County through Mr. Gaylord and Ms. Rogers regarding the existence of an agreement is more persuasive than Plaintiffs evidence." In addition to deferring determinations of credibility to the trial court, this finding was plainly supported by the testimony during the evidentiary hearing and related documents.

Gaylord's memory of the phone call was better than Kilduff's recollection. Gaylord remembered the precise day and time of the phone call: May 28th at around three o'clock in the afternoon. Gaylord was able to testify to the contents of the conversation: they spoke for about five minutes, he told Kilduff he was the custodian of the records Kilduff wanted, and he could provide the redacted IGA report and an index of documents relied upon right away since it had been recently provided to another requester. Kilduff said "that was an acceptable way to proceed." Gaylord remarked about the tone of the call, "[i]t was short on the pleasantries, pretty direct, businesslike." Gaylord immediately memorialized the phone call, and Kilduff's agreement, in an email to Rogers. Rogers later sent Kilduff an email noting that the IGA report was the "final response" and that the email response and attached file was "fulfill[ing] [the] public records request" and also referenced the agreement Kilduff made with Gaylord. Rogers told Kilduff if he had any additional questions, or believed the County should have provided additional documents, he should let her know. No one disputes that the County told Kilduff to follow-up if he wanted additional documents and he did not do so.

In comparison to Gaylord, Kilduff's recollection of the May 28 phone call was less precise. For example, Kilduff's declaration stated that the date of the call was "[o]n or about June 12" but testified that subsequent to his declaration, "after being reminded by

someone I can't remember, could have been my attorney . . . I went and I sought the phone record."  Unlike Gaylord, Kilduff did not take contemporaneous notes of the call, nor did he create any memorialization of what was said.  Kilduff testified that Rogers' last email—that provided the redacted final IGA report and stated, "[t]his email response and attachment fulfills your public records request"—notified him the County was providing the report but did not in any way limit what he originally requested.  Kilduff admitted that he did not remember exactly what was said on the call, but he "remember[ed] the gist of what we said and I certainly remember what we did not say," and "[he] remember[ed] there being no agreement that it was in lieu of or in any way replacing my request."

When comparing their testimonies, the trial court found that Gaylord provided more reliable testimony than did Kilduff:

> Based upon all of the testimony and exhibits, Mr. Gaylord's testimony concerning the May 28, 2015 phone conversation is credible, persuasive, and supported by Mr. Gaylord's contemporaneous e-mail to Ms. Rogers. The County has met its burden of proving that an agreement was reached with Mr. Kilduff to clarify and modify his request to the Final Report and then proceed to request additional documents.

Recognizing that a trial court's credibility determination may be made based on the manner in which a witness testifies without any requirement of documentary support, we note that, here, the trial court's finding was further supported by substantial evidence in the record.

### Denying Recusal Request

Kilduff next claims that the trial court erred by not recusing itself once the Supreme Court remanded Kilduff's case.  We disagree.

The Code of Judicial Conduct (CJC) requires judges to act with impartiality.  CJC

18

Canon 1. Judges must disqualify themselves from proceedings in which their impartiality may be reasonably questioned or if they become biased against a party. CJC Canon 2.11(A); In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). As we presume a trial court acts without bias or prejudice, a party making a claim of a judge's bias or prejudice bears the burden of proof. Meredith, 148 Wn. App. at 903; In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009). We will not disturb a trial court's recusal decision "absent a clear showing of abuse of that discretion." Wolfkill Feed & Fertilizer Corp. v. Martin, 103 Wn. App. 836, 840, 14 P.3d 877 (2000).

Kilduff indicates that the trial judge was biased because its May 2018 order found Kilduff's case to be frivolous and imposed sanctions. Generally, judicial rulings alone do not demonstrate bias. West v. Washington State Ass'n of Dist. & Mun. Ct. Judges, 190 Wn. App. 931, 943, 361 P.3d 210 (2015) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). A litigant is not entitled to a new judge for mere legal errors. State v. McEnroe, 181 Wn.2d 375, 388, 333 P.3d 402 (2014). Though the Supreme Court did reverse part of the trial court's May 2018 order, Kilduff fails to show any bias on the part of the trial court in rendering its decision.

Kilduff also suggests that the trial court was biased because it rejected Kilduff's motion for a new evidentiary hearing and dismissed his case a second time. Again, Kilduff fails to point to any bias or prejudice in the record from the trial court against Kilduff or his attorneys.

Kilduff fails to meet his burden to show that the trial court was biased or prejudiced against him.

19

Request to Have Witnesses Reappear

Kilduff argues that the trial court erred by not allowing Kilduff to present "new evidence." We disagree. Kilduff never requested to present evidence that was not previously presented.

Before the trial court, Kilduff requested a rehearing of the evidence previously presented in 2017:

> I think we're now at a place where a trial court must go back and evaluate the merits of this case and evaluate the testimony of the witnesses to understand and come up with a determination of the veracity of the witnesses. Because at its core, this is a he said/she said case. And this Court never made an evaluation of the veracity of the witnesses and which of the competing stories was most likely. And I think that, you know, the testimony that this Court heard . . . over three years ago, we have a very stale record now. So any worthwhile evaluation of the veracity will require a live rehearing.

The trial court then inquired whether Kilduff was asking to present new testimony or to have the court evaluate previous evidence. Kilduff responded:

> Well, I think that the whole reason why we have live testimony is to evaluate the veracity of the witnesses. And, you know, I sure can't remember, you know, what people looked like when they testified three years ago.
> So, you know, I think that the record is very cold. . . . we need to have the witnesses reappear and give testimony, yes. I mean, it's a three-year-old record.

Kilduff was not asking to introduce new, different evidence before the trial court, rather he was asking to reintroduce the same evidence and witnesses from the previous evidentiary hearing. Kilduff's request was intertwined with his request to obtain a new judge with "fresh ears." We, nevertheless, address this claim separately as it appears Kilduff contends the trial court should have allowed him to re-present testimony, regardless of recusal, because the testimony was three years old and stale. However,

Kilduff fails to adequately brief this issue. He assigns error to this issue but neglects to directly address it, mentioning it only in passing. We may elect not to consider an inadequately briefed argument. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

Kilduff has failed to show that the trial abused its discretion by denying him the opportunity to re-present evidence.

### Excluding Testimony about the IGA Investigation

Kilduff's counsel repeatedly attempted to question Gaylord during the evidentiary hearing about the substance of the IGA investigation. The County objected as to relevance and the trial court sustained the objections. Kilduff challenges those rulings arguing that the trial court prevented him from introducing highly relevant evidence.

Irrelevant evidence is inadmissible during a court proceeding. ER 402. Relevant evidence is "'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Lodis v. Corbis Holdings, Inc., 192 Wn. App. 30, 47-48, 366 P.3d 1246 (2015); ER 401. We review a trial court's evidentiary rulings to admit or exclude evidence for an abuse of discretion. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). We will conclude a trial court has abused its discretion if a ruling is manifestly unreasonable or based on untenable grounds or reasons. Id. at 669.

Kilduff argues Gaylord's knowledge about the unlawful acts in his investigation speaks to the veracity of Gaylord's testimony and the County's attempt to "cover up" unlawful acts. The County responds that the issue before the trial court was the

substance of the discussion between Gaylord and Kilduff in their May 2015 phone call, not the impropriety of the County's land use decisions. We agree with the County. The relevant issue before the trial court was Kilduff's PRA request, and it was not an abuse of discretion for the trial court to exclude irrelevant testimonial evidence regarding the underlying investigation of the IGA. Also, the substance of what counsel hoped to elicit from Gaylord was already in the record before the trial court. The final IGA report redacted only the name of the whistleblower. Gaylord's release of the IGA report to requesters contradicts Kilduff's argument that his testimony in the evidentiary hearing was motivated to cover-up the substance of the IGA report. Regardless, the record was sufficient for Kilduff to argue his theory of the case: that Kilduff was a more reliable witness and that the County was likely to be hiding records from him because these records revealed County wrongdoing.

The trial court did not abuse its discretion in excluding irrelevant testimonial evidence related to the IGA investigation.

### O'Dea v. City of Tacoma Is Not Applicable

Kilduff makes an additional argument in his reply brief that once he filed the PRA lawsuit, the County became aware that it had not provided the documents Kilduff requested and should have then produced them. Kilduff relies on O'Dea v. City of Tacoma, 19 Wn. App. 2d 67, 493 P.3d 1245 (2021).[10]

In O'Dea, the City never received O'Dea's public records requests. Id. at 73. The City saw these requests later, when O'Dea filed a PRA complaint against the City with the records requests attached as exhibits. Id. at 74. Despite receiving the

---

[10] Kilduff did not raise this argument in his opening brief. However, as O'Dea was published in August 2021—shortly after Kilduff filed his opening brief to this court.

requests, the City did not immediately respond to them. Id. at 74. Division Two of this court affirmed the trial's court decision that the City violated the PRA when it failed to respond to O'Dea's requests as soon as it received them attached to the PRA complaint. Id. at 84.

O'Dea is not applicable to Kilduff's case. In O'Dea, the issue before the court was whether the City of Tacoma received fair notice of the PRA requests that were attached to a filed complaint. Id. at 81. Here, Kilduff's challenge is whether his PRA request was modified and whether the County satisfied that request. We reject Kilduff's reading of O'Dea that would treat every PRA complaint as a new records request when the request had already been submitted.

### Costs and Attorney Fees

Kilduff requests costs and attorney fees below and on remand pursuant to RCW 42.56.550(4). RCW 42.56.550(4) awards any person who prevails against an agency in a PRA lawsuit with all costs and reasonable attorney fees. As Kilduff has not prevailed in this appeal, he is not entitled to costs and attorney fees.

### CONCLUSION

The trial court did not abuse its discretion when it denied Kilduff's request to recuse, when it denied his request to have witnesses reappear who had already testified, and when it denied Kilduff's request to introduce irrelevant testimony about the underlying investigation of the IGA. We defer to the trial court's credibility determinations finding that Gaylord's testimony was more persuasive than Kilduff's testimony. Substantial evidence supported the trial court's factual findings that the IGA-related documents were separated from the code enforcement file prior to Kulduff

23

submitting his PRA request and that Kilduff modified his request as to the IGA-related items.  We hold that the County satisfied Kilduff's modified PRA request and affirm the trial court's dismissal of Kilduff's complaint.  Accordingly, we deny Kilduff's request for costs and attorney fees.

Coburn, J.

WE CONCUR:

Bowman, J.

Mann, J.